THE CHURCH OF CHRIST IN INDIANAPOLIS AND ROBERT MORSE *v.*
THE METROPOLITAN BOARD OF ZONING APPEALS OF MARION
COUNTY ET AL.

[No. 2-776A261. Filed January 24, 1978. Rehearing denied March 31, 1978. Transer denied June 29, 1978.]

*Stephen B. Caplin,* of Indianapolis, for appellants.

*David F. Rees, Larry F. Whitham,* of Indianapolis, for appellees.

## CASE SUMMARY

BUCHANAN, J. — The Church of Christ in Indianapolis (the Church) and Robert Morse (Morse) appeal a judgment affirming a decision of the Metropolitan Board of Zoning Appeals, Division I (the Board) upholding determinations by the Division of Planning and Zoning, Department of Metropolitan Development of the City of Indianapolis (Metro) denying the Church and Morse the right to locate and operate a church within a residentially zoned area.

We reverse.

## FACTS

The facts most favorable to the judgment of the trial court are:

On May 16, 1975, the Church purchased by contract property consisting of land and a residence located at 2015 North Graham Avenue in the City of Indianapolis. The land so purchased was zoned "D-5".[1]

Land within the D-5 classification is to be used for residential purposes only. It is "permissive", only permitting those usages which are specifically enumerated within the designation itself. They are:

one family dwellings

two family dwellings if the land is located upon a corner lot

certain listed temporary uses

The classification does not list churches.

In June of 1975, the Church and Morse applied for, and received, permits from Metro allowing them to modify the structure located on the property. They began using the structure for religious purposes shortly after receipt of this permit.

---

1. The "D-5" designation indicates Dwelling District 5 under the Dwelling District Ordinance of Marion County, Sections 2.00, 2.06 and 2.06(a).

On July 15, 1975, a Notice of Zoning Violation was issued to Sena Daniel, the contract seller, as the record owner of the property, and delivered to the premises by the Indianapolis Division of Code Enforcement, another division of the Department of Metropolitan Development. The violation charged was the usage of the property for church purposes which, according to the notice, was an activity contrary to the purposes permitted by the D-5 zoning classification.

In August, 1975, the Church applied for an Improvement Location Permit from the Division of Planning and Zoning (Zoning). The permit requested permission for the construction of six off-street parking spaces with ultimate increase in the number of such spaces to twenty. The permit was denied because the D-5 classification did not permit churches within an area so zoned.

The Church then filed an administrative appeal with the Board. In upholding the legality of the actions of Metro, the Board specifically found that the primary use of the property zoned D-5 as a church was in violation of the zoning ordinance.[2]

The Church, by writ of certiorari, sought review by the Marion Circuit Court. In affirming the determinations of the Board & Metro, the Circuit Court stated in part:

7. The subject real estate is zoned D-5 by the zoning ordinance of Indianapolis and Marion County and, because of such classification, may not be used as a church unless such zoning classification is changed or real estate zoning variance is granted upon a proper showing and upon compliance with proper and appropriate standards.

8. The decision of the Metropolitan Board of Zoning Appeals affirming the decisions of the administrators of planning and zoning and code enforcement was not arbitrary or capricious nor did such decision or the prior decision of the administrators of the divisions of planning and zoning or code enforcement amount to a denial of constitutional rights under either the Constitution of the United States of America or the Constitution of the State of Indiana.

2. *Supra*, n.2.

This appeal followed:

## ISSUES

A sole issue is presented:[3]

Has the Church been unconstitutionally excluded from a residential area?

PARTIES' CONTENTIONS — The Church's position is that notice of the zoning "violation" and the subsequent denial of an improvement location permit to establish parking spaces for a church in a residentially zoned area is illegal because churches cannot be excluded from areas so zoned.

The City responds that, while the zoning ordinance in question does prohibit the establishment of a church in the area this, in itself, is not illegal because the zoning ordinance precludes only the *primary* usage of the property for church purposes. This, argues the City, does not preclude persons from meeting for religious purposes in a residential structure. The City further argues that provisions exist for variances and re-zoning, and that the Church was required to avail themselves of these provisions.

## DECISION

CONCLUSION — The exclusion of a Church from a residential area by a zoning ordinance is a violation of the fundamental right of freedom of worship protected by the first and fourteenth amendments to the U.S. Constitution and Article One of the Indiana Constitution.

Denial by the City of Indianapolis of the use of this residential property for religious purposes presents the classic confrontation between exercise of the police power[4] and a fundamental constitutional

---

3. Because we reverse, other issues presented by the Church are not considered.

4. IND. CODE 18-1-1.5-10 provides, in part:

A city shall have power to take actions and exercise control relating to the improvement, maintenance and use of real property.

Specifically, as provided by IND. CODE 18-4-2-25, a first class city, such as Indianapolis, has· the:

Power to establish regulations governing land planning, sub-division control and zoning concerning the construction of improvements upon the use of real property by private persons or public bodies.

right. If the citizen fails to heed Wendell Phillip's admonition that "Eternal vigilance is the price of liberty", encroaching government may devour that fundamental right (and what is more fundamental than freedom of religion, which is a vital part of freedom of thought?). Wittingly or unwittingly the City of Indianapolis has been guilty of such an encroachment.

Despite the fact that as long ago as 1954 the Supreme Court firmly embraced the principle that the building of a church may not be prohibited in a residential district, the City of Indianapolis deleted churches from its Zoning Ordinance "U-1" residential classification when the present "D-5" residential classification was adopted in 1966. *See Board of Zoning Appeals of Decatur v. Decatur, Indiana Company of Jehovah's Witnesses* (1954), 233 Ind. 82, 117 N.E.2d 115.

It did so in face of general acceptance of the rule that churches are proper in residential districts. 3 YOKELY, ZONING LAW AND PRACTICE § 38-14, and cases collected therein (1955). Early and modern case law alike has not countenanced the exclusion of churches from residential districts, even though inconveniences may be caused by influx into a neighborhood of vehicular or pedestrian traffic. Evidence of the strength of the rule allowing churches in residential areas is shown by two Indiana cases which include as a part of the church use, accessory areas and buildings. *Keeling v. Board of Zoning Appeals* (1946), 117 Ind. App. 314, 69 N.E.2d 613 (recreational building and playground used by Meridian Street Methodist of Indianapolis); and *Board of Zoning Appeals v. Wheaton* (1948), 118 Ind. App. 38, 76 N.E.2d 597 (Sisters' home in a Catholic church and school).

While zoning prohibitions against religious use of property in residential areas violates fundamental rights of freedom of worship and assembly, our Supreme Court in *Board of Zoning Appeals of Meridian Hills v. Schulte* (1961), 241 Ind. 339, 172 N.E.2d 39, recognized that there is a way to legally exclude churches:

> The way legally to effectuate this desire is private mutual covenants between property owners imposing appropriate servitudes on land. We must not employ the new device of zoning

to make exclusive districts much more exclusive. We do not believe it is a proper function of government to interfere in the name of the public to exclude churches from residential districts for the purpose of securing to adjacent landowners the benefits of exclusive residential restrictions: 172 N.E.2d at 43.

It is also true that churches are subject to such reasonable regulations as may be necessary to promote the "public health, safety, or general welfare." *Cantwell v. Connecticut* (1940), 310 U.S. 296; *West Virginia State Board of Education v. Barnette* (1943), 319 U.S. 624; *Commonwealth of Massachusetts v. Prince* (1943), 313 Mass. 223, 46 N.E.2d 755. A municipality may, for example, establish to the extent that it is reasonable to do so, set back lines. *Jehovah's Witnesses, supra*; 1 YOKELY § 164; 82 AM.JUR.2d, ZONING & PRACTICE § 155, p. 641.

Reasonable restrictions, however, are not tantamount to exclusion. They do not prevent the use, they merely conform it to the needs of modern city living spelled out in a master zoning plan, and they must be justified by a showing that the restriction is exercised "in the general public interest of safety, health and morals." *Schulte, supra.*

While the specific holding in *Jehovah's Witnesses* was that enforcement of a setback requirement was not unconstitutional, the basic premise for that holding was:

> [f]reedom of worship is a fundamental right protected by the Fourteenth Amendment of the United States Constitution from invasion by state action and [t]he law is well settled that the building of a church may not be prohibited in a residential district. 117 N.E.2d at 119.[5]

If it were necessary, *Schulte, supra* is an even more direct precedent for our conclusion that churches may not be excluded from residential areas. *Schulte* followed the rationale of *Jehovah's Witnesses* and cited with approval *Keeling* and *Wheaton*, and the statement in YOKELY, that the "overwhelming majority of decisions" do not allow churches to be excluded from residential districts. *See also: Congregation Temple Israel v. City of Crevecoeur* (Mo. 1959),

---

5. We fail to see any distinction between the building of a church and the conversion of a residence into-church use. Also, there is no contention by the City that the church is not an authentic religious body.

320 S.E.2d 451, which collects the cases dealing with this problem up to that time.

The City theorizes that the Church has not been "excluded" because it could seek a variance.

The requirements[6] of a variance are stringent (e.g., showing of hardship), and variances are only granted under special and extraordinary circumstances. Few property owners are likely to make such a showing for church use. Judge Bobbitt in *Jehovah's Witnesses* expressed awareness of the illegality of requiring a variance:

> If the refusal of the zoning board to grant a variance results in the exclusion of a church from a residential district, such action is illegal and must be reversed.

A property owner who was denied an improvement location permit and who did not file a petition for a variance, but who claimed the Zoning Ordinance was unconstitutional as it affected her property, was held not to be required to file for a variance in *Board of Zoning Appeals v. Koehler* (1963), 244 Ind. 504, 194 N.E.2d 49:

> This question may be brought up by a petition for a variance, [citation omitted] *or by a petition asserting unconstitutionality.* [citation omitted] It must be presented to the Board of Zoning

---

6.  IND. CODE 18-7-2-71 [53-969] Requirements for granting variance—Appeals to commission.—The boards of zoning appeals, in accordance with the territorial jurisdiction of such boards as established by sections 59 [18-7-2-59] and 61 [18-7-2-61] of this chapter, are hereby authorized to grant such variance from the applicable zoning ordinance upon determination in writing that:

1.  The grant will not be injurious to the public health, safety, morals, and general welfare of the community.

2.  The use or value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner.

3.  The need for the variance arises from some condition peculiar to the property involved and such condition is not due to the general conditions of the neighborhood.

4.  The strict application of the terms of the ordinance will constitute an unusual and unnecessary hardship if applied to the property for which the variance is sought.

5.  The grant of the variance does not interfere substantially with the metropolitan comprehensive plan adopted pursuant to sections 31 through 37 [18-7-2-31 — 18-7-2-37] of this chapter.

Appeals first, and this was done in the case-at-bar. No other administrative remedy is necessary to present the question to the trial court. We hold that the trial court had jurisdiction to hear and determine these proceedings. 244 Ind. at 514, 194 N.E.2d at 54. (Emphasis supplied)

As *Koehler, supra* and *Board of Zoning Appeals of Mishawaka v. LaDow* (1958), 238 Ind. 673, 153 N.E.2d 599 indicate, the Church need not seek a variance under the circumstances, because it has appealed to the Board an order denying it permission to construct off-street parking due to usage of the property for a church which was prohibited in a D-5 classification. It has thus been denied church use of the property, and whether the mechanism of denial is an off-street parking permit, a building permit, or a variance is of little significance. The Board determined the constitutional question in upholding denial of the Improvement Location Permit, which was proper, because by statute[7] it is the agency designated to hear appeals from denial of permits and variances, and is charged with enforcement of the zoning act. To require the Church to additionally seek a variance would be an empty formality. It exhausted its administrative remedy by raising the constitutional question at the first available opportunity and continuing to raise it thereafter.

*LaDow, supra,* recognizes that once the Board has acted on appeal from denial of an order or decision, the seeking of a variance is not necessary:

Although appellees concede they did not attempt to seek a variance as provided for under § 4 of the above act, it is difficult to see why the appeal to the board from the denial by the building commissioner of appellees' application for a building permit is not authorized by § 1 above which provides for appeals to the board and review of 'any other, . . . decision or determination

---

7. IND. CODE 18-7-2-70(1)

1. Hear and determine appeals from any review, any order, requirement, decision or determination made by an administrative official charged with the enforcement of any zoning ordinance or regulation or any ordinance requiring the procurement of an improvement location or occupancy permit, adopted pursuant to the provisions of this chapter [18-7-2-1, -89].

This same language prevailed when both *LaDow* and *Koehler* were decided.

made by an administrative official or board charged with the enforcement of any ordinance or regulation' adopted pursuant to the zoning act.

The denial of appellees' application for a building permit was certainly an 'order, . . . decision or determination . . . by an administrative official . . . charged with . . . enforcement' under the zoning act.

It cannot, therefore, be seriously contended that appellees' failure to seek a variance before the Board of Zoning Appeals deprived the board or the court below, on appeal therefrom, of jurisdiction of this particular case.

Even stronger is this language in *Koehler, supra,* which cites *LaDow*:

> . . . appellee in this case has asserted that the Zoning Ordinance is unconstitutional as it applies to her property. She properly presented this question to the Board of Zoning Appeals. She *did not request a variance,* but asked for a ruling on the constitutionality of the Zoning Ordinance, claiming her right to an Improvement Location Permit. *She did not have to proceed further upon an adverse ruling by the Board.* (Emphasis supplied)

The procedural facts of *Koehler* are identical to those before us. The Church challenged the constitutionality of the ordinance before the board and lost that challenge . . . and therefore need not proceed further; it has been excluded.

So the Church has demonstrated harm arising from operation of the ordiance excluding it from a residential district, and therefore has standing to attack its constitutionality. *Board of Commissioners of Howard County v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92; *Lamb v. State* (1975), 263 Ind. 137, 325 N.E.2d 180; *State v. Clark* (1966), 247 Ind. 490, 217 N.E.2d 588; *Terrel v. State* (1976), 170 Ind. App. 422, 353 N.E.2d 553; *Wells v. State* (1976), 170 Ind. App. 29, 351 N.E.2d 43.

It follows that the Board's action excluded the Church from a residential area and such action contravened the first and fourteenth amendments of the U.S. Constitution and Article One of the Indiana Constitution.

The judgment of the trial court affirming the decision of the Board is reversed, and the trial court is directed to reverse the decision of the Board and direct it to issue an Improvement Location Permit to the Church, and take such other action and proceedings as may be consistent with this opinion.

Lybrook, J. (by designation) concurs.

White, J. dissents with opinion.

## DISSENTING OPINION

WHITE, J. — While absolute exclusion of churches from residential districts is an impermissible infringement of the constitutional right of freedom of worship,[1] the right to use residentially zoned property as a church "is subject to such reasonable regulations as may be necessary to promote the public health, safety and general welfare." *Board of Zoning Appeals v. Jehovah's Witnesses* (1954), 233 Ind. 83, 88, 117 N.E.2d 115. Thus the failure of the ordinance in question to make express provision for church use of land in areas zoned only for residents does not mean that churches wishing to locate in such areas can ignore established procedures for avoiding or resolving the conflicts, potential or actual, between such use and the health, safety and welfare of the public. The procedure established by law for that purpose in Marion County is the variance procedure provided by Ind. Ann. Stat. §§ 18-7-2-70 and 18-7-2-71. § 18-7-2-70 makes provision for "commitments relative to the use . . . of . . . [the] property" and empowers the board of zoning appeals to place conditions on the granting of the variance. Since the ordinance contains no regulations specifically applicable to church use in residential areas, the variance procedure is the only means of subjecting such use to reasonable regulations. Cases such as *Board v. Schulte* (1961), 241 Ind. 339, 172 N.E.2d 39, and *Board v. Jehovah's Witnesses, supra,*

---

1. Incidentally, I do not believe exclusion can be effectively achieved by private mutual covenants as suggested in *Board of Zoning Appeals v. Schulte* (1961), 241 Ind. 339, 349, 172 N.E.2d 39, 43, in a quotation from *State, ex rel. Synod of Ohio v. Joseph* (1942), 139 Ohio St. 229, 249, 39 N.E.2d 515, 524, 138 A.L.R. 1274. It is to be noted that this Ohio opinion was handed down six years before the United States Supreme Court held, in *Shelley v. Kraemer* (1948), 334 U.S. 1, that while covenants excluding blacks from residential areas were not violative of the Fourteenth Amendment their enforcement by state courts was.

and the authorities cited by the majority furnish a guide as to what is reasonable.

Cases cited by the majority in support of its holding to the effect that the Church has gone through the equivalent of seeking a variance because it has appealed to the Board an order denying it permission to construct off-street parking do not sustain that proposition. In *Board v. LaDow* (1958), 238 Ind. 673, 680, 153 N.E.2d 599, Judge Bobbitt (the author of *Board v. Jehovah's Witnesses, supra*) notes in his concurring opinion that "[a]lthough the petition to the Zoning Board is loosely drawn, its effect is to seek a variance from the terms of the ordinance." And from the voluminous evidence recited in that case's majority opinion as having been heard by the Board, it appears that the Board gave virtually the same consideration to the appeal from the building commissioner's denial of a building permit as it would have given to a petition for a variance. The unanimous opinion in *Board v. Koehler* (1963), 244 Ind. 504, 511, 194 N.E.2d 49, notes that "[t]he Board treated her appeal as a request for a variance to permit the construction of a shopping center". In each of those cases the boards and the reviewing courts apparently had before them all the available evidence relevant to whether, *under the particular circumstances of that case,* the denial of permission to utilize the land for a particular purpose not then permitted by the zoning ordinance would deprive the appellant of a constitutional right and whether conditions to such use should be imposed. The decision of the Board in each such case was the equivalent of denying a variance. Not so here, however.

Here, by contrast, as the appellant's brief states:

"The Church and Robert [Morse, a contract purchaser with the church] did not apply for a variance of the property and the property was not varied. During the hearing before the Board, there was no evidence introduced that the Petitioners or their activities interfered with or were detrimental to the public health, welfare or morals or injured property. In fact, *the Administrator conceded such evidence was irrelevant to the issues before the Board.*" (My emphasis.)

Since the Church has not applied for a variance it has not been excluded from the residential zone in question.

The majority holds that because Ind. Ann. Stat. § 18-7-2-71 (Burns Code Ed., 1974) requires a showing of hardship as a condition to the grant of a variance it is unconstitutional to require a variance for church use of residentially zoned real estate. I agree that in many instances hardship as defined in the statute and case law applicable to variances for other uses may be impossible to prove in church cases. In such cases that requirement is obviously unconstitutional. In other church cases it may be impossible to meet other statutory criteria for a variance. In any such case where the failure to qualify for the variance does not also show that the particular church use petitioned for will breach such reasonable regulations as may be necessary to promote the public health, safety and general welfare, the statutory criteria must be ignored.

But the fact that statutory variance criteria cannot always be strictly adhered to without violating the First Amendment does not mean that churches can ignore all zoning statutes and ordinances. Nor does the fact that the Indianapolis zoning ordinance makes no express provision for using residentially zoned real estate for church purposes mean that churches can completely ignore zoning laws, substantive or procedural, which do not unreasonably impinge upon the right of worship.

I see nothing unreasonable about requiring a church to obtain a variance before it locates itself in a residential neighborhood, unless the board of zoning appeals denies the variance because the church fails to meet unconstitutional requirements. The courts are open to worshipers who appeal from such attempted oppression.

While it appears the Church deliberately elected not to apply for a variance there may well be mitigating circumstances which render it inequitable to require it to start all over again by applying for one. I would therefore vote to reverse the judgment and to remand the cause to the reviewing court with instruction to direct the zoning appeals board to treat the Church's application as a petition for a variance giving the Church permission to amend as it may desire.

NOTE—Reported at 371 N.E.2d 1331.