184 N.J. Super. 66 (1982)
445 A.2d 75
STATE OF NEW JERSEY
v.
ROBERT J. CAMERON, DEFENDANT.
Superior Court of New Jersey, Law Division Somerset County.
Decided February 9, 1982.
*68 Mr. Lawrence J. Supp, for defendant (Stephen S. Weinstein, attorney).
Mr. Stanley Cutler, for the Township of Franklin.
MEREDITH, J.S.C.
This case centers on the question of whether a municipality, in the exercise of its zoning power, may exclude places of worship from zones restricted to single-family dwellings.

I
The Reverend Robert J. Cameron appeared before the Municipal Court of Franklin Township on a charge of having violated a provision of the township's zoning ordinance. The Reverend, a Presbyter of the Reformed Episcopal Church, lives in a single-family home located in a zone of the township in which such *69 dwellings are the only permitted use. The complaint filed against Reverend Cameron is based on the allegation that he regularly held church services in his home. Appearing in the municipal court pro se, the Reverend, who had not sought a variance, attacked the constitutionality of the Ordinance and its application to him. He also claimed that the proceedings initiated against him were defective in various respects. The municipal judge rejected these arguments and found the Reverend guilty as charged. No penalty was assessed but Reverend Cameron was ordered to cease holding services in his home on pain of a $500 fine for each future violation. He then appealed to this court under R. 3:23. Represented by counsel, he acknowledges that his appeal operates as a waiver of defects in the record, see R. 3:23-8(c), but he continues to challenge the constitutionality of the ordinance and its application to him. The arguments he presents in support of his position will be addressed after a brief statement of the salient facts.

II
Reverend Cameron is the minister of a "formative congregation" known as the "Mount Carmel Reformed Episcopal Church." Until sometime in the spring of 1981 the congregation held its advertised Sunday services in a Franklin Township school. Apparently it was an increase in rent that led to the transfer of these services to the Reverend's home at that time. In a sworn affidavit the Reverend stated that despite a diligent search for a permanent location, "the least expensive acceptable" one that he could find, consisting of "1000 square feet of store front space," cost $350 a month, a sum that the congregation "cannot afford to pay." The use of temporary facilities would be a hardship, his affidavit continues, because the congregation's services require the use of religious articles, such as lecturn and pulpit, that are heavy, difficult to transport and subject to accidental damage when stored. In addition, "the solemnity of the service is depreciated by secular surroundings." The Reverend's affidavit concludes with the statement that in *70 his church, as well as in many others, it is a traditional practice for the services of a "fledgling congregation" to be held in the home of its minister or one of its members "until a permanent `church' location can be obtained."
After moving its Sunday services into Reverend Cameron's home, the congregation continued to advertise them in a local newspaper. See The Home News, June 13, 1981, "In the churches," page 5 ("The 11 a.m. service of Mount Carmel Reformed Episcopal Church will take place at [Reverend Cameron's residence], in the Somerset section [of Franklin Township], with the Rev. Robert J. Cameron preaching."). At the hearing the Reverend's wife testified that this advertisement was taken out of the newspaper after a few weeks and that subsequently attendance at services was by invitation only, with invitations extended to "people that we know, we meet [sic]."
Other testimony describing the services held in Reverend Cameron's home may be summarized as follows. Until they were halted by court order, these services were held from 11 a.m. to noon almost every Sunday, first in the Reverend's living room, then in a room that he had recently added to his house "for activities of the owner," to quote his building permit application of April 29, 1981. The services included prayers, singing and preaching, and were regularly attended by a number of people. A neighbor complained that he could hear the sermon and singing in his own home, some 80 feet from the Reverend's, and that cars parked on the street by those attending services hindered the passage of traffic. These statements were supported by the observations of the township's Chief Code Enforcer. He testified that while in the vicinity of the Cameron residence on Sunday, August 30, 1981, between 10:45 and 11:45 a.m., he heard vocal church music emanating from the Reverend's house and saw 14 cars parked in front of it, seven in the driveway and seven in the street. He also testified that the Reverend's house was located in the R-15 residential zone of the township.
*71 Turning now to the Franklin Township zoning ordinance, the zones it establishes, with their pertinent specifications, are as follows:

 Minimum
 Lot Size Maximum %
 (Interior Lots) of Lot
 Zones (sq. ft.) Coverage 
R-R - Rural-Residential R-R 100,000 10
R-A - Residential-Agricultural R-A 50,000 10
R-40 & R-40(1) - Residential R-40/40(1) 40,000 10
R-20 - Residential R-20 20,000 15
R-15 - Residential R-15 15,000 20
R-10 - Residential R-10 10,000 20
R-7 - Residential R-7 7,500 20
B-1 - Regional Business B-1 5 acres 25
B-2 - General Business B-2 20,000 40
B-3 - Neighborhood Business B-3 10,000 30
H-D - Highway Development H-D 5 acres 40
OPT - Office Professional
 Transition OPT 10,000 30
ROL - Research Office Laboratory ROL 3 acres 40
M-1 - Light Manufacturing M-1 5 acres 40
M-2 - Light Manufacturing M-2 1 acre 40
M-3 - Mining and Manufacturing M-3 1 acre 40

Except for the limitation that churches located in a residential zone must have a minimum lot requirement of two acres (see § 308.2 of the ordinance), "churches and similar places of worship" are permitted without qualification in the RR, RA, R40, R40(1) and OPT zones. They are permitted in the R20 zone only if they have "direct access to a major collector or arterial street," as defined in the township's master plan. In addition to "churches and similar places of worship," the RR, RA, R40, and R40(1) zones permit single-family dwellings, golf courses, certain schools and certain agricultural uses; the OPT zone permits one-and two-family dwellings, certain schools and certain professional offices, and the R20 zone only single-family dwellings and certain schools. Provisions for "accessory" and "conditional" uses in the ordinance need not be discussed here.
The three remaining R zones, the R-15, R-10, and R-7, permit only dwellings. In the R-7 zone two-family dwellings are permitted if specified area requirements are met; otherwise the *72 only permitted use throughout these three zones is single-family dwellings. See §§ 504-506 of the ordinance.
According to Reverend Cameron, the pertinent section of the township's zoning ordinance is unconstitutional on its face and as applied to him. In his view, the exclusion of all churches and similar places of worship from the R-15 zone serves no legitimate state interest, is "patently excessive" in relation to legitimate concerns of the police power, such as noise and traffic regulation, and is excessive as applied to his activities, which "resemble nothing more than a bridge party at anyone else's home in the same zone." The Reverend further maintains that the exclusion of "churches and similar places of worship" from the R-15 zone violates his rights under the First and Fourteenth Amendments to the United States Constitution and Art. I, par. 3 of the New Jersey Constitution. Finally, he argues that his activities are a permitted use under the ordinance in that his dwelling has not become a church or similar place of worship simply because his congregation holds its regular Sunday services there. For the reasons that follow, these arguments are held to be incorrect.

III
The zoning power of local government is limited by well-known principles of law. To be valid, a zoning regulation must present a reasonable exercise of the police power: it must be substantially related in fact to a legitimate government interest and it must be reasonably calculated to further that interest without substantially infringing upon inoffensive activities. State v. Baker, 81 N.J. 99, 105 (1979); Kirsch Holding Co. v. Manasquan, 59 N.J. 241, 251 (1971). However, if the activity infringed upon is constitutionally protected, the regulation is not valid unless it furthers a "sufficiently substantial" government interest and is "narrowly drawn" to avoid unnecessary intrusion on the protected activity. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68, 101 S.Ct. 2176, 2183, 68 L.Ed.2d 671 (1981). See, *73 also, United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Infringement upon a protected activity thus strips a zoning regulation of its strong presumption of validity and saddles the state with the burden of justifying it. See, e.g., Linmark Associates, Inc. v. Willingboro Tp., 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); Hyland v. Morris Tp., 130 N.J. Super. 470, 476 (App.Div. 1974), aff'd o.b. 66 N.J. 31 (1974). In such a case the governmental interest furthered by the regulation must be balanced against the effect of the regulation on the protected activity. State v. Miller, 83 N.J. 402, 412 (1980).
Within these limits, it is a valid exercise of the police power for local government to establish zones for single-family dwellings. State v. Baker, supra, 81 N.J. at 106; Berger v. State, 71 N.J. 206, 223 (1976); Collins v. Margate City Bd. of Adj., 3 N.J. 200, 208 (1949). Zoning for single-family dwellings promotes the public safety and welfare by minimizing congestion, encouraging stability and securing repose and solitude. See N.J.S.A. 40:55D-2(a); State v. Baker, supra, 81 N.J. at 106; Berger v. State, supra, 71 N.J. at 223. See, also, Carey v. Brown, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). However, although New Jersey places of worship are subject to reasonable police power regulation, Allendale Congregation of Jehovah's Witnesses v. Grosman, 30 N.J. 273 (1959), app. dism. for want of a substantial federal question, 361 U.S. 536, 80 S.Ct. 587, 4 L.Ed.2d 538 (1960), the question of whether they may be excluded from zones devoted to single-family dwellings has not yet been decided in this state. Cf. Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 359 (1953).
Authority elsewhere is divided. The United States Supreme Court has interpreted the Federal Constitution to permit such exclusion. See Corporation of Presiding Bishop v. City of Porterville, 90 Cal. App.2d 656, 203 P.2d 823 (D.Ct.App. 1949), app. dism. for want of a substantial federal question, 338 U.S. 805, 70 S.Ct. 78, 94 L.Ed. 487 (1949). See, also, Minney v. City of Azusa, 164 Cal. App.2d 12, 330 P.2d 255 (D.Ct.App. 1958), app. dism. for *74 want of a properly presented federal question, 359 U.S. 436, 79 S.Ct. 941, 3 L.Ed.2d 932 (1959); Milwaukie Co. of Jehovah's Witnesses v. Mullen, 214 Or. 281, 330 P.2d 5 (Sup.Ct. 1958), app. dism. and cert. den. 359 U.S. 436, 79 S.Ct. 940, 3 L.Ed.2d 932 (1959). In Porterville "a church group contended that its First Amendment rights were violated by a municipal zoning ordinance preventing the building of churches in certain residential areas." American Communications Ass'n v. Douds, 339 U.S. 382, 398, 70 S.Ct. 674, 683, 94 L.Ed. 925 (1950). The Supreme Court's dismissal of the Porterville case for want of a substantial federal question is a disposition on the merits that lower courts must follow as to the precise issues of federal law presented and necessarily decided in that case. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 499, 101 S.Ct. 2882, 2888, 69 L.Ed.2d 800 (1981). Nonetheless, some courts continue to hold that exclusion of churches from residential zones violates the Federal Constitution. See, e.g., Church of Christ v. Metropolitan Board of Zoning, 371 N.E.2d 1331 (Ind. App. 1978). The validity of such holdings presumably rests on the presence of issues somewhat different from those necessarily decided in Porterville. See Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1975); Diocese of Rochester v. Planning Board, 1 N.Y.2d 508, 154 N.Y.S.2d 849, 136 N.E.2d 827 (Ct.App. 1956). Cf. Hill v. Garner, 434 U.S. 989, 992, 98 S.Ct. 623, 625, 54 L.Ed.2d 486 (1977) (White, J., dissenting) (state courts have invalidated statutes on same or very similar grounds to those previously held insubstantial by the Supreme Court). They may also be justified by a perception of doctrinal change, see Hicks v. Miranda, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975), or by reliance on a provision of the relevant state constitution, see, e.g., Church of Christ v. Metropolitan Board of Zoning, supra, or a state statute, see, e.g., Congregation Temple Israel v. City of Creve Coeur, 320 S.W.2d 451 (Mo. 1959). Decisions based on these predicates, in conjunction with similar decisions antedating Porterville, see, e.g., City of Sherman v. Simms, 143 Tex. 115, 183 S.W.2d 415 (1944), are sufficiently *75 numerous for commentators to regard the majority of jurisdictions as holding exclusion of places of worship from residential zones to be impermissible, see, e.g., Anderson, American Law of Zoning, (2 ed. 1978), §§ 12.19, 12.20.
Although a number of the predicates mentioned above are available here, so that Porterville is not controlling, this court declines to follow the majority rule.
Apart from the First Amendment and its New Jersey analogue, the pertinent sections of the Franklin Township zoning ordinance are clearly valid once the legitimacy of single-family zoning is granted. It may be that "religious institutions are beneficial to the public welfare by their very nature," Jewish Reconstructionist Synagogue v. Incorporated Village of Roslyn Harbor, 38 N.Y.2d 283, 286, 379 N.Y.S.2d 747, 752, 342 N.E.2d 534, 537 (Ct.App. 1975), cert. den., 426 U.S. 950, 96 S.Ct. 3171, 49 L.Ed.2d 1187 (1976), but like other institutions that may be considered inherently beneficial, such as charities, hospitals and newspapers, places of worship may have a deleterious effect on the tranquillity of the single-family zones in which their operations are located. People attending services may create as much litter, noise, traffic and congestion as people attending the theater or a sporting event. See Allendale Congregation of Jehovah's Witnesses v. Grosman, supra, 30 N.J. at 279-80. Services may be held not only on Saturday or Sunday but throughout the week, see, e.g., Town v. State ex rel. Reno, 377 So.2d 648, 651 (Fla.Sup.Ct. 1980), app. dism. and cert. den. 449 U.S. 803, 101 S.Ct. 48, 66 L.Ed.2d 7 (1980) (three times daily), and may continue for several hours at a time, accompanied by singing and chanting, id. In addition to services, other activities may be countenanced under religious auspices. See, e.g., Synod of Chesapeake, Inc. v. City of Newark, 254 A.2d 611 (Del. Ch. 1969) (coffee house); Corporation of Presiding Bishop v. Ashton, 92 Idaho 571, 448 P.2d 185 (Sup.Ct. 1968) (baseball from 7 a.m. to 10 p.m.); Twin-City Bible Church v. Zoning Board of Appeals, 50 Ill. App.3d 924, 8 Ill.Dec. 919, 365 N.E.2d 1381 (Ct.App. 1977) *76 (study groups, meetings, fellowship and membership classes). Indeed, churches and similar places of worship "are often used as places of instruction and entertainment." Miami Beach United Lutheran Church v. City of Miami Beach, 82 So.2d 880, 882 (Fla. 1955). As a result of their presence, the quiet benefits of single-family zones may well be lost. Nor should likely effect on property values be ignored. See State v. Village of Bayside Board of Trustees, 12 Wis.2d 585, 108 N.W.2d 288 (Sup.Ct. 1961). See, also, Home Builders League v. Berlin Tp., 81 N.J. 127, 144-45 (1979).
These considerations may be given due regard by local government. Under N.J.S.A. 40:55D-62a zoning ordinances "shall be drawn with reasonable consideration to the character of each district and its particular suitability for particular uses and to encourage the most appropriate use of land." With respect to permitting places of worship in areas where single-family dwellings are a prominent or the only permitted use, the relevant provisions of the Franklin Township zoning ordinance, which are summarized at page 71 above, represent a legitimate exercise of this statutory mandate. Taken as a whole, these provisions implement the determination that, despite the undesirable side effects that places of worship may engender, they are generally appropriate in the township's zones where single-family dwellings are a prominent or primary use. The exceptions, the zones devoted to single-family dwellings from which places of worship are excluded, are those zones in which minimum lot sizes required are relatively small and in which permissible building-to-lot size ratios are relatively large, a combination tending to aggravate the effects of institutional noise, litter, traffic and congestion on neighboring residents. These more compact zones, the R-15, R-10, and R-7, are exceptions in that they encompass only a small portion of the township's area in which single-family dwellings are a prominent or primary use. Apart from any places of worship that may exist in these zones by variance or as nonconforming uses, the residents of these zones have places of worship available to them in *77 the nearby R-20, R-40, R-40(1), R-A, R-R and OPT zones. There is no evidence to suggest that despite its provisions the ordinance operates to exclude places of worship from the entire township or to cloister them in small or hard to reach areas. See Mooney v. Village of Orchard Lake, 333 Mich. 389, 53 N.W.2d 308 (Sup.Ct. 1952).
In support of his contention that the ordinance provisions at issue here are invalid, Reverend Cameron cites Home Builders League v. Berlin Tp. and State v. Baker, both supra. These cases are inapposite. The minimum floor area requirements invalidated in the Home Builders League case were "unrelated to legitimate zoning purposes" but appeared "to be directed solely toward economic segregation." 81 N.J. at 148. Here the contested regulations are substantially related to the purposes of single-family zoning. They appear to have no improper goal or motive but rather tend to expand the class of beneficiaries of single-family zones to include persons who, though desiring the stability and repose they offer, cannot afford the more sizeable tracts of land that would serve as a buffer against institutional spillovers. While, in balancing the utility of places of worship against their disquieting effects, it would be possible to conclude that the township should allow places of worship in the R-15 zone, or should exclude them from the R-20 zone altogether, a court has no authority to substitute its judgment for that of the local governing body. See Bow & Arrow Manor v. West Orange, 63 N.J. 335, 343 (1973). As to the provision that churches in residential zones must have a minimum lot size of two acres, no opinion concerning its validity need be expressed since it is not at issue here.
The Baker case concerns a more profound issue. In providing for single-family zones, the ordinance challenged in Baker defined "family" as "[o]ne (1) or more persons occupying a dwelling unit as a single non-profit housekeeping unit," except that any group of more than four persons "not related by blood, marriage, or adoption shall not be considered to constitute a family." 81 N.J. at 104 (citation omitted). This numerical *78 proviso was invalidated on the ground that it was both over- and under-inclusive with respect to its purposes. Id. at 107, 110. The court observed that irrespective of the floor area or lot size of a dwelling unit, the ordinance permitted it to be occupied by ten distant cousins but not by a group of five unrelated "widows, widowers, older spinsters or bachelors  or even of judges." Id. (citation omitted). However, one might also observe that occupancy of a dwelling by five separate families, each an older and childless couple, could very possibly advance the stability and repose of a neighborhood to a greater extent than would occupancy of the same dwelling by one family comprised of parents, children, dog and stereo. Similarly, a small place of worship might create fewer problems for its neighbors than a large family, but so also might a small restaurant, barber shop, professional home office, rooming house, or even funeral parlor, cf. Frizen v. Poppy, 17 N.J. Super. 390 (Ch.Div. 1952). In each case detriment to stability, repose and the public health and safety might be prevented by restrictions on occupancy and automobile use, by enforcement of criminal statutes and general police power ordinances, and by application of the law of nuisances. See Kirsch Holding Co. v. Manasquan, supra, 59 N.J. at 253-254. If this more "realistic" approach defined the limits of the zoning power, zoning would revert to its earlier status as a mere adjunct of nuisance law, and the power to zone for a category of uses, such as single-family dwellings, could not be sustained. See Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Nor could zoning ordinances be framed "with reasonable consideration to the character of each district and ... to encourage the most appropriate use of land." N.J.S.A. 40:55D-62 a. Since single-family zoning was upheld by the court in Baker, supra, 81 N.J. at 106, 109, an ordinance intended to establish such zones cannot be invalidated on the ground that it yields a kind of arbitrary result that is attributable to the categorical nature of the court's holding.
*79 In short, that Reverend Cameron's services may resemble "nothing more than a bridge party" is not a reason for invalidating the single-family provisions of the Franklin Township zoning ordinance. The question of whether they apply to the Reverend's services will be considered after a discussion of the constitutional rights that, in his view, protect his services from the operation of the ordinance.

IV
The First Amendment states, in pertinent part:
Congress shall make no law ... prohibiting the free exercise [of religion]; or abridging the freedom of speech, ... or the right of the people peaceably to assemble....
The First Amendment restricts state action by way of the Fourteenth Amendment. See, e.g., Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). A local zoning ordinance is a form of state action. See, e.g., Young v. American Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Hence, the Franklin Township zoning ordinance is subject to the First Amendment.
In Reverend Cameron's view, all of the First Amendment proscriptions quoted above are violated by the ordinance. However, its single-family provisions do not manifest the constitutional infirmities that have caused other ordinances or statutes to be invalidated. They do not prohibit any First Amendment activity throughout the township. See Schad v. Mount Ephraim, supra. They do not prohibit or regulate any First Amendment activity based on its content. See Metromedia, Inc. v. City of San Diego, Carey v. Brown and Linmark Associates, Inc. v. Willingboro Tp., all supra. They do not regulate any religious belief. See Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). They do not require anyone to act in a manner contrary to his or her religious beliefs, see West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. *80 1178, 87 L.Ed. 1628 (1943), nor do they condition receipt of a public benefit upon performance of actions contrary to one's religious beliefs, see Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Instead, their impact on First Amendment freedoms is slight and incidental. Consequently, they are justified if they substantially further a legitimate and important government purpose unrelated to suppression of First Amendment activity while infringing upon such activity to no greater an extent than is essential to furthering that purpose. See United States v. O'Brien, supra, 391 U.S. at 377, 88 S.Ct. at 1679. See, also, Young v. American Mini Theatres, Inc., supra, 427 U.S. at 78, 96 S.Ct. at 2456 (Powell, J., concurring). Because the single-family provisions of the Franklin Township ordinance meet this standard, see pages 76-79 supra, they are justified. See, also, Widmar v. Vincent, ___ U.S. ___, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).
In support of his views, Reverend Cameron relies on Wisconsin v. Yoder, supra. In Yoder the state sought to compel Amish children to attend public high school. A central tenet of the Amish faith commands its followers to live in an agrarian church community, isolated from the secular world and its influence. As a result, compelling Amish children to attend public high school, with its current emphasis on success and pleasure, would not only have produced conflict in the Amish community but might ultimately have led to its destruction. 406 U.S. at 212, 92 S.Ct. at 1531. The court's holding that the compulsory attendance law could therefore not be applied to members of the Amish faith has no relevance here. First, the exclusion of places of worship from the small, single-family zones of Franklin Township poses no threat to the continued existence of the Reformed Episcopal Church. There is no evidence to suggest that the church has been deprived of any place or structure of special significance to it, cf. Badoni v. Higginson, 638 F.2d 172 (10 Cir.1980), cert. den. 452 U.S. 954, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981); Denver Urban Renewal Auth. v. Pillar of Fire, 191 Colo. 238, 552 P.2d 23 (Sup.Ct. 1976), nor that *81 any particular detriment has been suffered by it or its members as a result of the exclusion, see Thomas v. Review Board, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). That a congregation might find it more expensive to locate in the permitted zones does not render the exclusion invalid. See Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). Second, the practice of holding services in a minister's home has not been shown to be central to or required by the Reverend's church but only to be a permissible element in its teaching and tradition. See page 70, supra; Sequoyah v. Tennessee Valley Auth., 620 F.2d 1159 (6 Cir.1980), cert. den. 449 U.S. 953, 101 S.Ct. 357, 66 L.Ed.2d 216 (1980). Moreover, this practice is apparently allowed by the township; nothing in its zoning ordinance suggests that a minister residing on a two-acre lot in any of the appropriate zones would be prohibited from holding church services in his home, subject, of course, to occupancy, parking and similar restrictions. See Allendale Congregation of Jehovah's Witnesses v. Grosman, supra. In short, whereas the statute in Yoder compelled the Amish "to perform acts undeniably at odds with fundamental tenets of their religious beliefs," 406 U.S. at 218, 92 S.Ct. at 1534, the ordinance in this case only restrains the Reverend's congregation from performing acts that are in keeping with its secular interests. Hence the ordinance does not burden the free exercise of religion within the meaning of Wisconsin v. Yoder.
Nor do the relevant paragraphs of the New Jersey Constitution support the Reverend's views. See N.J.Const. (1947), Art. I, pars. 3, 6, 18. In particular, the ordinance deprives no one "of the inestimable privilege of worshiping Almighty God in a manner agreeable to the dictates of his own conscience." Id., par. 3. Rather, it merely limits the secular interest of a congregation to establish a place of worship at a location of its own choosing. That in so doing the ordinance violates none of the Reverend's rights under the Federal Constitution has been shown above. No authority has been cited by Reverend Cameron to suggest that the analysis or result should be any different *82 under the New Jersey Constitution. Cf. Marsa v. Wernik, 86 N.J. 232, 239 n. 2 (1981), app. dism. and cert. den. ___ U.S. ___, 102 S.Ct. 495, 70 L.Ed.2d 373 (1981).

V
The Reverend's final argument is that the ordinance does not apply to the services held in his home. He contends that a residence does not become a "church or similar place of worship" simply because a congregation holds its regular Sunday services there. In his view, the use of the word "similar" in the quoted phrase shows that the ordinance prohibits only "what we think of as a traditional church or synagogue." He also claims that his services constitute a permissible accessory use under the ordinance. By construing the ordinance in accordance with these points, the court would, in his opinion, "avoid the harmful result of prohibiting an innocuous use." This line of argument does not require extensive comment.
A church has been defined as "a place where persons regularly assemble for worship." Ritter v. Jersey City Dist. Missionary Society, 105 N.J. Eq. 122, 123 (Ch. 1929). This definition is especially appropriate here in that noise, traffic and the like are engendered not by the spire and stained glass of a church, but by the activities of its congregation. While church buildings are typically more expansive than single-family dwellings, the latter are far more numerous and accessible. Thus, regular home services could spoil the tranquillity of single-family zones to a greater extent than religious activities held in church buildings, in particular as each religion, no matter what its doctrines or practices, would have an equal right to occupy dwellings located in single-family zones, see, e.g., Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968); Marsa v. Wernik, supra. It follows that the phrase "churches and similar places of worship" should be construed to encompass single-family dwellings used for regular religious services. For the same reason, the word "similar" cannot be interpreted to restrict the operation of the ordinance to places of worship that are similar to "traditional" church buildings.
*83 Secondly, although the Reverend's Sunday services may be an "accessory use" within the meaning of § 200.1 of the ordinance, the use of a single-family home for church services is not mentioned in § 504.2 of the ordinance, "Permitted Accessory Uses" in the R-15 zone, no more than in § 504.1, "Permitted Uses" in the same zone. But under the maxim of statutory construction that "the mention of one thing is the exclusion of another," and in light of the purposes of the ordinance, the proper inference to be drawn from the silence is that even if the Reverend's services meet the criteria of § 200.1, they are not a permitted accessory use in the R-15 zone. Thus, there is no need to determine whether the Reverend's services are an accessory use within the meaning of § 200.1.
Finally, the question of whether the services held in Reverend Cameron's home were "innocuous" is beyond the scope of this proceeding. The Reverend is appealing a judgment of guilt as to a zoning violation, not the denial of a variance or the grant of an injunction. In hearing the case the role of the municipal court judge was not to weigh the effects of the Reverend's services, nor to balance them against other considerations, but simply to determine whether he was guilty beyond a reasonable doubt of the zoning violation with which he was charged. See Belleville v. Parrillo's, 83 N.J. 309, 318 (1980). To find Reverend Cameron guilty the municipal judge was required to conclude only that the relevant provisions of the Franklin Township zoning ordinance were facially valid and valid as applied; that they prohibited the activities allegedly engaged in by the Reverend, and that the Reverend did in fact engage in the prohibited activities. Other issues were beyond the competence of the municipal judge and he correctly refrained from hearing evidence in regard to them.
The conclusion of this trial de novo on the record of the Reverend's appeal is, therefore, that he is guilty beyond a reasonable doubt of violating a valid provision of the Franklin Township zoning ordinance. Because the municipal court imposed *84 no penalty on the Reverend, no penalty may be imposed on him by this court. State v. DeBonis, 58 N.J. 182 (1971). On the other hand, because in a quasi-criminal proceeding such as this, only a penalty may be imposed, Belleville v. Parillo's, supra, 83 N.J. at 318, the municipal court order directing Reverend Cameron to cease holding services in his home must be vacated.