### Michael A. MILHARCIC and North Meadow Circle of Friends, Appellants (Petitioners Below),

### v.

### METROPOLITAN BOARD OF ZONING APPEALS OF MARION COUNTY (DIVISION II), Herron Morton Place Association, Inc., Herron Morton Place Association Historic Preservation Committee, Jerry Handfield, David Stahl, Sue Dial, Wayne Patrick, Alice McMillan and Roger Kreger, Appellees (Respondents Below).

#### No. 2–1084 A 315.

Court of Appeals of Indiana, Second District.

March 4, 1986.

Teresa D. Harper (Loyal), Indianapolis, for appellants.

David F. Rees, City-County Legal Div., Indianapolis, for appellees.

SHIELDS, Judge.

The North Meadow Circle of Friends, a Quaker Meeting, and Michael A. Milharcic, owner of the subject real estate, appeal a judgment affirming a decision of the Metropolitan Board of Zoning Appeals (Board) denying a variance to permit the use of the subject real estate by North Meadow as a worship facility and residential quarters for individuals affiliated with the meeting.

We reverse and remand.

## FACTS

Michael A. Milharcic, owner of the land and residence located at 1710–1714 Talbott Street, and the North Meadow Circle of Friends, a Quaker Meeting, entered into a lease with option to purchase the real estate. Because the real estate was zoned D–8 for residential use, Milharcic filed a Petition for Variance of Use to allow North Meadow to use the real estate as a worship facility, a meeting office and as a multi-occupant residence for meeting members or affiliates.

North Meadow Quaker Meeting is unprogrammed and, therefore, has no pastor. Worship is a meditative process relying on silence and the participation of those who are present. The subject property is situated in urban Indianapolis and is part of the Herron-Morton neighborhood. Since the mid-1970's, property owners have begun restoring and renovating many of the homes in the neighborhood. In July 1983, Herron-Morton Place became a historic district, listed on the National Register of Historic Places.

The Metropolitan Board of Zoning Appeals heard the Petition for Variance of

Use on November 22, 1983. Due to an indecisive vote, the petition was again presented to the Board on December 13, 1983. Another indecisive vote followed. On January 17, 1984, the petition was again presented. At that time, and in accordance with Ind.Code Ann. § 36–7–4–921 (Burns Supp.1985), North Meadow entered into six commitments concerning the real estate.[1] The Board denied the variance. Milharcic and North Meadow, by writ of certiorari, sought review by the Marion County Superior Court. The trial court affirmed the Board's decision.

## ISSUE

■ While Milharcic and North Meadow raise two issues on appeal, our resolution of the first is dispositive of the case. Rephrased, the dispositive issue is whether the exclusion of North Meadow from a D–8 residential zone district by a denial of a variance of use violates the fundamental rights of worship and peaceful assembly as protected by the United States and Indiana Constitutions.

## DISCUSSION

Milharcic and North Meadow assert the Board's decision is contrary to law. They argue the exclusion of North Meadow from a D–8 residential zoning district is a violation of the fundamental rights of freedom of worship and peaceful assembly protected by the First and Fourteenth Amendments to the U.S. Constitution and Article One of the Indiana Constitution.

■ We agree. Irrespective of specific uses permitted or prohibited by a particular zoning ordinance, a religious use is always a permitted use of property in a residentially zoned area. *Church of Christ v. Metropolitan Board of Zoning Appeals* (1978), 175 Ind.App. 346, 371 N.E.2d 1331, 1333–34.[2]

■ However, although religious facilities are a permitted use and cannot be totally excluded, religious facilities remain subject to reasonable regulations which are "necessary to promote the 'public health, safety, or general welfare'," *Church of Christ*, 175 Ind.App. at 351, 371 N.E.2d at 1334, if the "benefit to the public health, morals, general welfare and safety outweighs the restriction which such regulation places upon the right of freedom of worship and assembly." *Jehovah's Witnesses*, 117 N.E.2d at 119; *see Church of Christ*, 371 N.E.2d at 1333–34.

*Board of Zoning Appeals v. Decatur, Ind. Co. of Jehovah's Witnesses* (1954), 233 Ind. 83, 117 N.E.2d 115 is illustrative of this point. *Jehovah's Witnesses* involved the constitutionality of the application of setback and off-street parking provisions in a city zoning ordinance to a religious organization and its plans for the construction of a church on a particular lot. The supreme court held the setback provision was a reasonable regulation and a "valid exer-

---

1. The commitments on the subject property included: 1) Off-street parking for religious and related activities provided through arrangements with the adjacent Herron School of Art and neighboring businesses; 2) a limit (fifty) on the number of persons allowed to meet for religious or related purposes; 3) religious or related activities limited to those conducted by North Meadow or another unprogrammed Friends monthly meeting group; 4) interior or exterior structural changes would not be made which would prevent the real estate, upon termination of the religious-related uses permitted by the variance, from readily being converted to an exclusively residential use; 5) unobtrusive signage comparable to the size, appearance, and content of the approximate 12 inch by 18 inch sign presently affixed to the front of the structure; and 6) a maximum number of eight members or affiliates of North Meadow, as defined by the commitments, would reside in the structure. In addition, North Meadow agreed to have its application considered as an application for a temporary variance of three years.

2. Indiana is in accord with the majority view that churches may not be lawfully excluded from residential districts. *See Church of Christ v. Metropolitan Board of Zoning Appeals* (1978), 175 Ind.App. 346, 371 N.E.2d 1331; *Board of Zoning Appeals of Meridian Hills v. Schulte* (1961), 241 Ind. 339, 172 N.E.2d 39; *Board of Zoning Appeals of Decatur v. Decatur, Ind. Co. of Jehovah's Witnesses* (1954) 233 Ind. 83, 117 N.E.2d 115; *see also* 2 A. Rathkopf & D. Rathkopf, *The Law of Zoning and Planning* § 20.01 (4th Ed.1985); 6 E.C. Yokley, *Zoning Law and Practice* § 35–14 (4th Ed.1980).

cise of the police power in the interest of health and public welfare." 117 N.E.2d at 118. In making this determination, the court noted the enforcement of the regulation did not prohibit the building of the proposed church because it could reasonably comply with the requirement. *Id.*

Conversely, the court struck down the application of the off-street parking regulation because the benefit to the public health, morals, general welfare and safety provided by the parking regulation did not outweigh the restriction which the regulation placed upon the right of freedom of worship and assembly. 233 Ind. at 94, 117 N.E.2d at 119. The ordinance required 6,250 square feet of off-street parking for every 25 automobiles, or one parking space for every six seats in the church. The evidence before the zoning board disclosed the church offered to reduce the seating capacity of the proposed church building and that there was ample parking space available to accommodate the number of people who were expected to attend services. In addition, during the times the church proposed to hold services, the traffic was characterized as "very low." Further, the evidence revealed three other churches in the immediate vicinity, although built prior to the ordinance, used the streets for parking. In light of this evidence, the supreme court concluded any traffic hazard created

by the church was not "sufficient to tip the scales of justice in favor of the police power in the interest of public welfare and safety, as against the fundamental right of freedom of worship and peaceful assembly." 117 N.E.2d at 120.

In summary, religious facilities may not be totally excluded from residentially zoned areas; they are subject to reasonable restrictions provided the restrictions are within the realm of the police power and, further, the need or benefit which occasions the exercise of the police power outweighs the restriction on the rights of freedom of worship and assembly. Necessarily, then, the criteria enumerated in Ind.Code Ann. § 36-7-4-918 (Burns Repl.1981)[3] is totally inapplicable to religious facilities seeking to use residential property for religious purposes or seeking a variance from non-use restrictions applicable to the subject property.[4] Thus, the Board's decision is erroneous because its decision was based upon the statutory criteria. In addition, the trial court's findings reveal its review of the Board's decision assumed the propriety of the statutory criteria. Therefore, we must reverse and remand to the trial court with instructions to remand the cause to the Board for further consideration and proceedings consistent with this opinion.[5]

**3.** See Ind.Code Ann. § 36–7–4–918.4 (Burns Supp.1985):

"ADVISORY–METRO. A board of zoning appeals shall approve or deny variances of use from the terms of the zoning ordinance. The board may impose reasonable conditions as a part of its approval. A variance may be approved under this section only upon a determination in writing that:

1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;

2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;

3) the need for the variance arise from some condition peculiar to the property involved;

4) the strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the variance is sought; and

5) the approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter."

**4.** Due to a deficiency in the Board's findings, we are unable to determine whether any non-use restrictions impacted the Board's decision in the present case. Of course, if such restrictions exist, the Board must apply the criteria as set forth in *Jehovah's Witnesses,* 117 N.E.2d at 119, and reiterated above.

**5.** Because remand is necessary, we also bring to the Board's attention that among other things, it must make findings of fact which address the question whether the use of the real estate as a residence for up to eight individuals constitutes a religious use. If the Board finds the residential use of the real estate is a religious use, the Board, in considering the Petition for Variance of Use, must utilize the standard applicable to churches. On the other hand, if the Board does not find this use of the real estate to be a

Judgment reversed and remanded with instructions to vacate the decision of the Board of Zoning Appeals and to remand the cause to that Board for further proceedings consistent with this opinion.

BUCHANAN, C.J., and SULLIVAN, J., concur.

religious use, the statutory criteria of I.C. § 36–7–4–918.4 applies.

In determining whether a use constitutes a religious use, two Indiana cases are instructive. In *Keeling v. Board of Zoning Appeals* (1946), 117 Ind.App. 314, 69 N.E.2d 613, Keeling asserted the decision of the Board of Zoning Appeals granting permission for the erection of a church in a residential district was illegal. Keeling argued, among other things, the petitioners had only applied for permission to erect a church building when, in fact, the proposed church building included, as part of a single unit, a parking lot, gymnasium, recreation building, playground, and outside amphitheater. The Court of Appeals affirmed the trial court's affirmance of the Board's action:

"We hold that the right to erect and use a modern church building may in a proper case, such as the one before us, include a parking lot for the use of members in attending church services and any meetings held by the church, and all such rooms and facilities under one roof as ordinarily form and constitute a part of the building, equipment, and are deemed necessary, or useful in connection with a modern church of the particular denomination involved."

69 N.E.2d at 618 (citing *Western Theological Seminary v. City of Evanston,* 325 Ill. 511, 156 N.E. 778 (1927)).

In *Board of Zoning Appeals v. Wheaton* (1948), 118 Ind.App. 38, 76 N.E.2d 597, the appellant, the Most Reverend Paul C. Schulte, Archbishop of Indianapolis, sought a permit to build a church project consisting of a Catholic Church, priest's residence, a convent or sisters' home, school, and an off-street parking facility. The Board of Zoning Appeals granted the permit. The trial court modified the Board's decision to prohibit the erection of the sisters' home as a part of the proposed church project. On appeal, this court applied the rule stated in *Keeling.* The court quoted with approval an excerpt from *Scott Co. v. Roman Catholic Archbishop, Diocese of Oregon* (1917), 83 Or. 97, 163 P. 88, 91:

"[T]he erection of a convent may fairly be termed a 'church purpose,' which is the term used in the dispensing clause of the restriction. There is a broad distinction to be drawn between this phrase and the words 'for the erection of a church.' A building may be erected for church purposes other than those connected with divine worship. The word 'church' applies not only to a building used for worship, but to any body of Christians holding and propagating a particular form of belief, as, for instance, the Baptist Church, the Methodist Church, or the Catholic Church; and any building intended to be used primarily for purposes connected with the faith of such religious organization may be said to be used for church purposes. It is a matter of universal, and therefore judicial, knowledge, that association of nuns, sisters of charity, and the like are as much a part of the organization of the Catholic Church as its priesthood, and that convents are as much a part of its organization and church policy as church buildings; and in this sense the erection of a convent is as much a church purpose as a house of general worship."

76 N.E.2d at 601. Applying these principles to the evidence before it, the *Wheaton* court held a "convent or 'sisters' home' must be considered an integral part of any Roman Catholic church project, which is composed of four component parts, *vis.:* church, priests' mansion, a 'sisters' home,' and school." 76 N.E.2d at 601.