DEAN WELLS *v.* STATE OF INDIANA.

[No. 3-1174A196.  Filed July 14, 1976.]

*John S. Bloom, Bloom, Bloom & Fleck,* of Columbia City, for appellant.

*Theodore L. Sendak,* Attorney General, *John R. O'Bryan,* Deputy Attorney General, for appellee.

GARRARD, J.—Dean Wells was convicted of visiting a common nuisance in violation of one of the provisions of the Indiana Controlled Substances Act, IC 1971, 35-24.1-4-3.5 (Burns Supp. 1974).

He asserts that the evidence failed to establish that he "visited" the residence in question, and that it failed to establish that the residence was a common nuisance. In addition, he attempts to challenge the constitutionality of the statute. We find the evidence sufficient and that Wells lacks standing to assert his claim of overbreadth. We therefore affirm.

The evidence is basically undisputed. On February 24, 1974, an undercover police officer went to the residence in question in Columbia City, Indiana. He was admitted by one Dan Rex. Wells and two young women were seated in the living room. Rex and the police officer went directly to the kitchen which adjoined the living room. When they did this, Wells assumed a position in the opening between the living room and the kitchen about eight feet away from the kitchen refrigerator. With Wells standing there, Rex and the officer engaged in conversation about the sale of phencyclidine, a controlled substance. Rex removed a small cellophane package from the refrigerator and proffered it to the officer as a sample of what was for sale. Rex then told the officer that Rex would have to leave the premises to procure the desired quantity of the substance, and the officer should return for it in 30 to 45 minutes.

Rex and appellant Wells left the residence together in Rex's automobile and the police officer left. A half hour later, the officer returned and was admitted by one of the women. Nearly an hour later, Rex and Wells returned. Again, Rex went into the kitchen with the police officer while Wells stood

in the entryway. Rex produced a packet (State's Exhibit #1) and he and the officer then bargained over the price. The sale was then concluded, and Rex spoke of other drugs he would be "getting in" at a later date. Upon this evidence, Wells was convicted of violating IC 1971, 35-24.1-4-3.5:

> "(a) Any store, shop, warehouse, dwelling house, apartment, building, vehicle, boat, aircraft, or any place whatever, which is used by any person for the purpose of illegally using any controlled substance or which is used for the illegal keeping or selling of the same shall be deemed a common nuisance. No person shall visit such a common nuisance.
>
> (b) Any person who violates this section is guilty of a misdemeanor and shall be fined not less than twenty-five dollars [$25.00] nor more than one hundred dollars [$100] and may be imprisoned in the county jail for a period of not more than six [6] months."

Wells first contends that the state failed to prove he was a visitor within the meaning of the statute because the prosecution did not establish that he was not a resident of the house in question. He argues that the history of the statute demonstrates legislative intent to exclude residents from criminality. We disagree.

As originally enacted, Uniform Narcotic Act, Acts 1935, Ch. 280, § 13 referred to narcotic drugs, defined a common nuisance and proscribed keeping or maintaining such a nuisance. Sections 1 and 2 of Public Law 468, Acts 1971 amended the statute to add "visiting" to the prohibited activities, and made the violation of this section a misdemeanor. Then in 1973, the statute was substantially amended to speak in terms of controlled substances. As a part of these amendments, IC 1971, 35-24.1-4-2(a) (5), (b) made it a felony for one "knowingly to keep or maintain any store, shop, etc., and IC 1971, 35-24.1-4-3.5, under which Wells was prosecuted, made it a misdemeanor to visit any such store, shop, etc.

The testimony was that the house was the residence of Dan Rex. From the testimony regarding Wells' presence, it was

reasonable for the court to conclude that he was a visitor within the meaning of the statute.

Wells next argues that the evidence failed to establish that the residence was a common nuisance. The essence of his claim is that the term "common nuisance" carries such a fixed connotation of continuousness or recurrence that the statute must be read to require proof that the residence was repeatedly used for the illicit purpose before a conviction may be had.

As pointed out by Judge Staton, it must be noted that the 1973 statute does not, in form, merely provide that it shall be an offense to visit a place where anyone may sell or consume a controlled substance. Instead, the statute provides that any store, etc., which is used . . . shall be deemed a common nuisance. It then proscribes visiting such a common nuisance.

While criminal statutes are to be strictly construed, they nevertheless should not be overly narrowed so as to exclude cases fairly covered. They are to be interpreted so as to give efficient operation to the expressed intent of the legislature. *See, e.g., State* v. *Bigbee* (1973), 260 Ind. 90, 292 N.E.2d 609; *Simmons* v. *State* (1955), 234 Ind. 489, 129 N.E.2d 121.

The question is the proper effect to be given to the legislative choice of expressing the proscribed activity in terms of common nuisance. As a general rule, of course, the legislature may supply its own definition of a term and we are bound to adhere to it. Here there is no question concerning the qualitative nature of the activity which will constitute a nuisance. The nuisance will arise from the use of a store, etc. for the purpose of illegally using, keeping or selling controlled substances. The issue concerns the quantitative nature of the activity. Absent the reference to common nuisance, the statute would appear to plainly pro-

scribe visiting a place where controlled substances were *then* being used, kept or sold.[1]

On the other hand, when the legislature employs terms having a peculiar and appropriate meaning in law, those terms are to be understood according to their technical import. IC 1971, 1-1-4-1; *Gross Income Tax Div.* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415.

In *Keeth* v. *State* (1923), 193 Ind. 549, 139 N.E. 589, our Supreme Court upheld the conviction of one accused of maintaining a common nuisance by selling or manufacturing intoxicating liquor in violation of the Prohibition laws. On appeal, the question was whether the trial court erred in refusing to require the state to elect which one of three transactions occurring on different days it intended to rely upon for a conviction. The court held all the occurrences were germane to the single offense of *maintaining* a common nuisance. In construing the statute, the court stated:

> "The words 'common nuisance' as used in the statute carry with them a notion of continuous or recurrent violation. . . . The words 'maintains' and 'maintaining' denote continuous or recurrent acts approaching permanence. We therefore conclude that the case is analogous to those of keeping a gaming house . . . to the effect that the keeping of such a house is a continuous act, and . . . constitutes but one indivisible offense. . . ." 193 Ind. 550, 551; 139 N.E. 589, 590.

Thus, other jurisdictions have similarly held, at least where the offense was the conduct of keeping or maintaining a common nuisance, that proof of an isolated occurrence would not sustain a conviction. *Skinner* v. *State* (1972) 16 Md.App. 116, 293 A.2d 828; *Commonwealth* v. *Patterson* (1885), 138 Mass. 498. While the connotation ascribed to "keeping" and "maintaining" is important to the decision of these cases, the notion

---

1. We exclude from consideration at this point the question of whether such a visit, in order to make one liable, requires knowledge of the proscribed use by the visitor.

that more than an isolated instance attends the term "common nuisance" is inescapable.

"Common nuisance" and "public nuisance" have been traditionally treated as interchangeable terms, and the designation "common" does import a public character. As stated in *Skinner* v. *State* (1972), 16 Md.App. 116, 126 293 A.2d 828, 834:

> "The adjective 'common' and the phrase 'common nuisance' are, moreover, accepted words of art at the common law. The whole fraternity (or sorority) of common vagrants, common brawlers, common scolds, common nightwalkers, common drunkards, common prostitutes and common gamblers share the characteristic that their offenses are of a recurring and habitual nature."

We therefore conclude that the term as used in IC 1971, 35-24.1-4-3.5 requires a showing of more than an isolated or casual instance of the prohibited activity.

This, however, does not mean that to establish the existence of such a nuisance the state must establish sales, etc. on a specified number of days. The question is evidentiary.

In Wells' case, the evidence established that the house was Rex's residence. A quantity of the controlled substance was in a packet in the refrigerator. It was proffered as a sample of the product for sale. The quantity actually sold was not at the residence, but was brought to the residence for the sale transaction. The seller discussed other controlled substances he "would be getting in" in the future. From this evidence, the court could reasonably have inferred beyond a reasonable doubt that the residence was being used for the prohibited purposes within the meaning of the statute. *See, Shacklett* v. *State* (1925), 196 Ind. 114, 147 N.E. 326, where evidence pertaining to intoxicating liquors on the premises on one occasion was sufficient to sustain a conviction for maintaining a common nuisance.

Wells' final contention is that the statute as it existed in 1974 was unconstitutional for vagueness and overbreadth

because it did not expressly provide that to be guilty of visiting, an accused must have knowledge of the illegal use. It is claimed the statute is overbroad in restricting freedom of assembly.

Wells lacks standing to present this issue. As the Court stated in *Broadrick* v. *Oklahoma* (1973), 413 U.S. 601, 610-11:

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. [Citations omitted.] . . . These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws."

*See, also, Lamb* v. *State* (1975), 263 Ind. 137, 325 N.E.2d 180.

While an exception has been recognized where First Amendment rights are involved, even then, where conduct rather than speech is involved and the appellant stands at the hard core of permissible regulation, his standing to assert facial overbreadth will not be recognized. *Broadrick* v. *Oklahoma, supra.* Such is the present instance. Clearly the state can permissibly regulate the frequenting of places where controlled substances are known to be illegally kept, used and sold. Upon the facts heretofore recited, Wells stands clearly within the ambit of those subject to regulation.

His claim of vagueness fails for the same reason. The assertion is that the statute does not express the requirement of knowledge. The evidence is that Wells observed the conduct when the sample was displayed, that he left with Rex, and returned knowing a sale was about to be made. Under such circumstances, he can demonstrate no harm. *Cheaney* v. *State* (1972), 259 Ind. 138, 285 N.E.2d 265, cert. den. 410 U.S. 991.

The judgment is affirmed.

Hoffman, J., concurs; Staton, P.J., dissents with opinion.

### DISSENTING OPINION

STATON, P.J.—I dissent for the reason that I do not believe there is sufficient evidence to support Wells' conviction of visiting a common nuisance. I agree with the majority that the use of the term "common nuisance" in IC 1971, 35-24.1-4-3.5[1] requires the State to show more than an isolated or casual use of the premises for the prohibited activity for conviction. I also agree that Wells lacks standing to challenge the constitutionality of IC 1971, 35-24.1-4-3.5.

However, I cannot agree that the State proved beyond a reasonable doubt that the Rex' residence was a common nuisance within the meaning of IC 1971, 35-24.1-4-3.5 on the date of Wells' visit. There was no evidence presented at trial that the Rex' residence had ever been used for the illegal purpose of "using, keeping or selling" a controlled substance prior to Wells' visit on February 24, 1974. Officer Hampshire testified as follows:

"Q. Mr. Hampshire, you had never seen or known either of these defendants before the night of the 24th of February, 1974, had you?

"A. No, Sir.

"Q. Had you ever been at that apartment which you de-described as maybe apartment 1, 514 Oak Street, or wherever it is? The apartment you described, before the 24th of February, 1974?

"A. No, Sir.

"Q. Have you ever — had you ever made any other drug buys at that apartment before the night of the 24th of February, 1974?

\* \* \*

"A. No, Sir.

\* \* \*

"Q. Had you conducted any kind of stake out or observation of that apartment on that day or any previous day?

"A. No, Sir."

---

1. IC 1971, 35-24.1-4-3.5, which is Pub. L. No. 335, § 3.5 [1973] Ind. Acts 1860, was repealed in 1975 and is now found in IC 1971, 35-24.1-4.1-15 (Burns Code Ed.).

In order for the State to establish that Wells did in fact visit a common nuisance, there must be some evidence that the place visited was a common nuisance at the time of the visit. Rex' comment that he would be "getting in" other drugs in the future does not prove that Rex sold drugs at his residence on prior occasions. The mere fact that Rex had a sample of the drug on the date Wells was present at the Rex' residence does not establish that Rex had used, kept or sold drugs at his residence in the past. This circumstantial evidence merely supports a suspicion that Rex was involved in the proscribed activities of "using, keeping or selling" drugs prior to Wells' visit on February 24, 1974. It is well established that evidence merely tending to establish a suspicion of guilt is not sufficient to sustain a conviction. *Phillips* v. *State* (1973), 260 Ind. 321, 295 N.E.2d 592; *Stocklin* v. *State* (1976), 169 Ind. App. 49, 345 N.E.2d 863.[2]

Since the State has failed to prove an essential element of the crime of visiting a common nuisance, Wells' conviction should be reversed.

NOTE.—Reported at 351 N.E.2d 43.

---

2. In *Shacklett v. State* (1925), 196 Ind. 114, 147 N.E. 326, cited by the majority, it does not appear that the Court was specifically confronted with a challenge to the sufficiency of the evidence to show that the premises in question were, in fact, a common nuisance. The only specific question of insufficient evidence dealt with in *Shacklett, supra,* was whether the premises were maintained by the appellant or by a third person.