CONNIE R. TERREL *v.* STATE OF INDIANA.

[No. 2-575A120. Filed August 25, 1976. Rehearing denied November 17, 1976. Transfer denied February 2, 1977.]

*R.D. Reading, Reading and Swartz,* of Wabash, for appellant.

*Theodore L. Sendak,* Attorney General, *K. Richard Payne,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Defendant-Appellant, Connie R. Terrel, appeals her conviction of visiting a common nuisance in violation of the Indiana Controlled Substances Act, IC 1971, 35-24.1-4-3.5, Ind. Ann. Stat. § 10-3561c (Burns Supp. 1974), alleging that: (1) the statute is unconstitutional; (2) the trial court improperly overruled her motion to suppress evidence; (3) prejudicial hearsay evidence was erroneously admitted at trial; and (4) the State failed to prove the Corpus Delecti of the crime charged.

We affirm.

## FACTS

The facts and evidence most favorable to the State are as follows:

On April 13, 1974, Officers Gidley, Ross, and Drook of the Wabash Police Department were dispatched to an apartment located at 1069 Rainbow Lane, Wabash, Indiana, to investigate a complaint of a loud party in progress. At 12:25 A.M., Officer Gidley knocked on the door while Officers Drook and Ross peered into the front window of the apartment. Officer Drook later testified as to what he observed:

"Q. What did you do when you arrived?
A. I stood on the side walk just to—the sidewalk goes this way and then runs up to the apartment and I stood on the front sidewalk just to the left of the other one while they was knocking on the door.
Q. Is there a window there in the apartment?
A. Yes, there is.
Q. Were you able to see in it?
A. Yes, I could.
Q. What did you observe?
A. I could see two or three people going from one room to another. In this instance, from the main room there that that window was, right straight back.

Q. What was the room right straight back?
A. It was the kitchen, when we got in. It was in the kitchen.
Q. Could you identify any of those people?
A. I couldn't see them that well. I could just see people. I didn't know any of them at the time, anyway."[1]

Officer Ross testified that shortly after the knock he saw persons running around in the apartment.[2]

Several minutes after the knock, Defendant Terrel opened the door and invited the Officers inside. Upon entry, all three officers smelled a strong odor of burning marijuana in the apartment.

Richard Powell, Paul Brooks, and Defendant were the only persons downstairs when the police arrived. Defendant informed the Officers the residents of the apartment were away for the evening, and a baby-sitter, Brenda Bone, was in charge of the premises until they returned. The Officers found Brenda Bone and Jerry Coplea, a seventeen year old minor, on the upstairs level of the apartment.

With Brenda Bone's permission, the Officers searched the apartment and discovered a green substance, later identified as marijuana, in the kitchen sink. Large lumps of the same substance were found stuffed inside the garbage disposal, and a bowl containing marijuana was found in the kitchen cupboard. The five occupants (Defendant Terrel, Richard Powell, Paul Brooks, Brenda Bone and Jerry Coplea) were placed under arrest and transported to police headquarters.

On April 18, 1974, Defendant was charged with visiting a common nuisance[3] and contributing to the delinquency of a child,[4] i.e., Jerry Coplea. After a trial before the court without

---

1. Record at 54.
2. Record at 38.
3. IC 1971, 35-24.1-4-3.5, Ind. Ann. Stat. 10-3561c (Burns Supp. 1974) has since been repealed by the Acts of 1975, P.L. 338, § 4. For present law effective until July 1, 1977, see IC 1971, 35-24.1-4.1-15 (Burns Code Ed.).
4. IC 1971, 35-14-1-1 (Burns Code Ed.).

a jury on October 3, 1974, Defendant was acquitted of contributing to the delinquency of a child but found guilty of visiting a common nuisance.

## ISSUES

The sole issue for our disposition is:

Does Defendant have standing to challenge the constitutionality of the Common Nuisance Statute?

In her brief, Defendant baldly asserts the State failed to prove the Corpus Delecti of the crime; the trial court erred in overruling her motion to suppress evidence, and prejudicial hearsay testimony was admitted into evidence. These additional allegations of error are presented without any cogent argument or citation of authority. Pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), we will not consider these issues because they were improprly preserved for review. *Riggs* v. *State* (1976), 264 Ind. 263, 342 N.E.2d 838; *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805; *Thomas* v. *State* (1975), 164 Ind. App. 647, 330 N.E.2d 325; *Beech* v. *State* (1974), 162 Ind. App. 287, 319 N.E.2d 678.

## PARTIES CONTENTIONS

Defendant claims IC 1971, 35-24.1-4-3.5, Ind. Ann. Stat. § 10-3561(c) (Burns Supp. 1974) contravenes the due process provision of the 14th amendment to the United States Constitution in not requiring those convicted of visiting a common nuisance to have "knowledge" that illicit drugs were kept or used on the premises. The statute reads as follows:[5]

---

5. IC 1971, 35-24.1-4.1-15 (Burns Code Ed.), which later repealed the Common Nuisance statute quoted above, added "knowledge" as an element of the crime of visiting a common nuisance:

"35-24.1-4.1-15 [10-3561(w)]. Common nuisance—(a) A person is guilty of common nuisance *if he knowingly visits* or maintains a store, warehouse, dwelling, apartment building, vehicle, boat, aircraft or any other place which is used by any person for the purpose of unlawfully using a controlled substance.

(b) Common nuisance is a misdemeanor punishable to a determinate term of imprisonment in the county jail of not more than six (6)

10-3561c, IC 35-24.1-4-3.5. Prohibited acts D—Penalties.—
(a) Any store, shop, warehouse, dwelling house, apartment, building, vehicle, boat, aircraft, or any place whatever, which is used by any person for the purpose of illegally using any controlled substance or which is used for the illegal keeping or selling of the same shall be deemed a common nuisance. *No person shall visit such a common nuisance.*

(b) Any person who violates this section is guilty of a misdemeanor and shall be fined not less than twenty-five dollars [$25.00] nor more than one hundred dollars [$100] and may be imprisoned in the county jail for a period of not more than six [6] months. [IC 1971, 35-24.1-4-3.5, as added by Acts 1973, P.L. 335, § 1, p. 1834.]

The State argues the language of the statute implies a knowledge requirement, and Defendant has failed to overcome a strong presumption favoring this statute's constitutionality.

## DECISION

CONCLUSION—It is our opinion Defendant lacks standing to challenge the constitutionality of the statute because she was not harmed by the alleged defect there being sufficient evidence to show Defendant actually knew marijuana was kept and used in the apartment.

Defendant must display some injury attributable to the alleged statutory defect before attaining standing to assail its constitutionality:

It is also a fundamental proposition that the person attacking the constitutionality of a statute must have his rights adversely affected by the particular act and the particular section of the act which he is attacking.

"As a general rule, the constitutionality of a statute or other governmental action is to be considered in the light of the standing of the party who seeks to raise the question and its particular application. It is a firmly established principle of law that the constitutionality of a statute or ordinance may not be attacked by one whose rights are not,

months and a fine of not less than twenty-five dollars [$25.00] nor more than one hundred dollars [$100]. [IC 1971, 35-24.1-4.1-15, as added by Acts 1975, P.L. 338, § 3, p. 1793.] (Emphasis added.)

or are not about to be, adversely affected by the operation of the statute. This rule applies to all cases both at law and in equity, and is equally applicable in both civil and criminal proceedings. *One of the may variations of this rule is the principle that one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the constitution.*

A constitutional question may not be raised by one whose rights are not directly and certainly affected; or in a case where no attempt is being made to enforce the provision attacked. In other words, one may attack the constitutionality of a statute only when and as far as it is being, or is about to be, applied to his disadvantage; and to raise the question he must show that the alleged unconstitutional feature of the statute injures him and so operates as to deprive him of a constitutional right, and, of course, it is prerequisite that he establish in himself the claimed right which is alleged to be infringed. * * *" 16 C.J.S. Constitutional Law § 76, pp. 226-236.

*State* v. *Clark* (1966), 247 Ind. 490, 494, 217 N.E.2d 588, 590; *Lamb* v. *State* (1975), 263 Ind. 137, 325 N.E.2d 180; *Wells* v. *State* (1976), 170 Ind. App. 29, 351 N.E.2d 43.

*See: Callahan* v. *State* (1966), 247 Ind. 350, 214 N.E.2d 648, certiorari denied 385 U.S. 942, 87 S.Ct. 305, 17 L.Ed.2d 222; *Lander* v. *State* (1958), 238 Ind. 680, 154 N.E.2d 507; *Sarlls, City Clerk* v. *State ex rel. Trimble* (1929), 201 Ind. 88, 166 N.E. 270, 67 ALR 718; *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N.E. 469, 33 LRA 313.

Defendant's due process rights will not have been impaired by the omission of "knowledge" from the elements of IC 1971, 35-24.1-4-3.5, Ind. Ann. Stat. § 10-3561c (Burns Supp. 1974), if Defendant actually had knowledge marijuana was kept and used on the premises.

We believe the evidence bears a reasonable inference Defendant knew marijuana was being smoked in the apartment. There were five people present in the apartment when the police arrived. Brenda Bone and Jerry Coplea were upstairs while Paul Brooks, Richard Powell and Defendant were downstairs when Officers Drook and Ross looked through the living room window. Jerry Coplea testified he and Brenda Bone were

together on the upstairs level of the apartment until the officers brought them downstairs.[6] Officer Ross observed the downstairs occupants respond to the knock by running around the apartment. Although Officer Drook could not positively identify the two or three persons he saw go into the kitchen, the evidence clearly shows that only three persons were in the living room when Drook looked. One of these three persons, Richard Powell, was asleep on a couch when the police appeared at the door. This implicates Paul Brooks and Defendant as the persons Drook and Ross saw run and enter the kitchen. Powell testified:[7]

> Q. You were asleep on the couch when the police knocked, weren't you?
> A. Yeah. I wasn't sound asleep. I was dozing off, is what it was.
> Q. You dozed off in ten minutes, is that right?
> A. I was pretty tired. I told you I'd been drinking. I was pretty tired. I don't know. I was just—what would you call it—dozey?
> Q. Then how do you know whether anybody ran into the kitchen?
> A. Well, I don't know whether anybody ran into the kitchen or not, but when I stood up—everybody said, "The police" and I stood up and I looked out and Mr. Drook was looking through the window at me and I looked back over to the side *and I could see Paul and Connie standing back in the hall* because I was at the end of the couch and Connie came back around and went over and unlocked the door.
> (Emphasis added.)

One can reasonably infer from the evidence most favorable to the State that when the police knocked on the door, Defendant, knowing marijuana was being used in the apartment, ran down the hall to a kitchen where marijuana was later found in a garbage disposal. From this viewpoint, substantial evidence of probative value exists to support an inference of

6. Record at 46, 50, 51.
7. Record at 82.

knowledge.[8] There was testimony concerning running, the odor of burning marijuana, and Defendant's movements to and from a place where marijuana was subsequently found in a semi-destroyed condition.

Where the sufficiency of circumstantial evidence is in question, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court. *Stice* v. *State* (1950), 228 Ind. 144, 89 N.E.2d 915; *Petillo* v. *State* (1950), 228 Ind. 97, 89 N.E.2d 623.

*McAfee* v. *State* (1973), 259 Ind. 687, 689, 291 N.E.2d 554, 556; *Hinderer* v. *State* (1975), 166 Ind. App. 351, 336 N.E.2d 401; *Doby* v. *State* (1975), 166 Ind. App. 368, 336 N.E.2d 395.

In conclusion, sufficient evidence exists to show the apartment was a place where dangerous drugs were stored and used,[9] and that Defendant was aware of this fact.

No reversible error having been shown, we hereby affirm.

Affirmed.

WHITE, J. and HOFFMAN, J., (by designation), concur.

NOTE.—Reported at 353 N.E.2d 553.

8. Compare *Carter* v. *State* (1975), 163 Ind. App. 653, 325 N.E.2d 467, at 469.

9. There was evidence that drug usage on the premises extended beyond this isolated occurrence involving Defendant. See: *Wells* v. *State*, *supra*. Jerry Coplea testified he had smoked marijuana in the apartment at 7:30 P.M. that evening before Defendant arrived. Defendant first visited the apartment at approximately 10:00 P.M. and then returned shortly after midnight.