**Lori A. BASS and Johnny R. Snow, Appellants (Defendants Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 34A04–8701–CR–10.**

Court of Appeals of Indiana, Fourth District.

Sept. 10, 1987.

James R. Fleming, Howard County Public Defender, Kokomo, for appellants.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

In this appeal, Lori Bass and Johnny Snow argue that there is insufficient evidence to sustain their convictions for visiting a common nuisance. We agree and reverse.

The evidence in this case shows that on April 26, 1986 Bass, her son and Snow went to Craig Cullison's residence. They arrived at Cullison's around midnight and sat on the front porch with Cullison and Brenda Barnett, both of whom were present when Bass and Snow arrived. At approximately 1:15 a.m., the group entered Cullison's residence and was joined by Bass' sister, Grace Fields, about 15 minutes later.

In response to a complaint regarding loud music, three Kokomo police officers arrived at Cullison's around 2:37 a.m. Officer Davis looked through the screen door upon approaching the residence and saw the five adults, some of whom appeared to be drinking beer, and Bass' son in the living room. Bass, Snow and Fields were sitting on a couch, and directly in front of them was a coffee table on which Officer Davis saw a "bong", a cylinder object[1] containing a small brown chunk of items and scissors containing a burnt segment of a small white object. Officer Davis then heard someone say, "Oh, my God!" and saw some of the adults putting objects down on the floor. Officer Davis did not know who had made the statement or what objects were being placed on the floor.

When the police officers entered the residence, they seized the three objects from the coffee table. They arrested Cullison for possession and maintaining a common nuisance and arrested the other adults, including Bass and Snow, for visiting a common nuisance.

At trial, Officer Davis testified that the "bong" was not hot when he picked it up

and that none of the adults appeared to be under the influence of marijuana when they were arrested. A laboratory analysis was conducted on the three items seized and they were found to contain .8 grams of hashish, a small quantity of marijuana, and TCH, a residue common to marijuana. Grace Fields testified that no one had smoked marijuana while she was at Cullison's and that she had seen the "bong" but not the pill bottle or the scissors. Bass testified that no one had smoked marijuana or hashish at Cullison's during any of her visits, which were infrequent. Bass further testified that numerous items, including coupons, pictures, coasters, and a plant were on the coffee table and that she had seen the scissors in an ashtray but not the "bong" or pill bottle. The trial court convicted Fields, Bass and Snow of visiting a common nuisance but only Bass and Snow are involved in this appeal.

> A person who knowingly or intentionally visits a building, structure, vehicle, or other place that is used by any person to unlawfully use a controlled substance commits visiting a common nuisance, a Class B misdemeanor.

IND. CODE 35-48-4-13(a). Bass and Snow argue that the evidence is insufficient to prove beyond a reasonable doubt that they knew Cullison's residence was used for the unlawful use of a controlled substance and that it is insufficient to prove beyond a reasonable doubt that Cullison's residence constituted a common nuisance.[2] We agree.

Although the language of IC 35-48-4-13(a) fails to clearly apply the mens rea element of knowingly or intentionally to the element of the unlawful use of a controlled substance, the legislative history of the statute and case law interpreting some of its recent predecessors clearly indicate

---

1. The cylinder object was described as a pill bottle by one of the other officers. (R. 133) We therefore have referred to it as such.

2. Bass and Snow also raise the issue of whether the evidence is sufficient to sustain their convictions as the state failed to offer the "bong", pill bottle or scissors into evidence. We, however, have found it unnecessary to address this issue.

We do note that the record is confusing because during their testimony, Officer Davis and the police chemist referred only to the items by number and not by description, and they had numbered them differently. Introducing the items as numbered exhibits and having the witnesses refer to them by those numbers would have provided a clearer record for review.

that one must know that a controlled substance is unlawfully used before he can be convicted of visiting a common nuisance. In *Pruitt v. State*, the First District held that the elements of the crime of visiting a common nuisance appear to be: 1) frequent or visit, 2) a place, 3) knowing it to be used for selling, keeping, or using, 4) of any dangerous drug. (1975), 166 Ind.App. 67, 333 N.E.2d 874 (interpreting IND. CODE 16-6-8-7 (1971 superseded) (Burns Code Ed.) [3]) *See also Carter v. State* (1975), 163 Ind.App. 653, 325 N.E.2d 467 (also interpreting IC 16-6-8-7 (1971 superseded) (Burns Code Ed.)).

In *Wells v. State* (1976), 170 Ind.App. 29, 351 N.E.2d 43, the defendant challenged the statute which made visiting a common nuisance a crime as unconstitutionally vague because it failed to express that one must know of the illegal keeping, sale or use of a controlled substance. The Third District held the defendant lacked standing to make such a challenge because the evidence was sufficient to infer that he had knowledge of the illegal use. *Id.* (interpreting IND. CODE 35-24.1-4-3.5 (1971 superseded) [4]) This view was also expressed by the second district in *Terrel v. State* (1976), 170 Ind.App. 422, 353 N.E.2d 553 (also interpreting IND. CODE 35-24.1-4-3.5 (1971 superseded)). In *Mayotte v. State* (1977), 172 Ind.App. 252, 360 N.E.2d 34 (interpreting IND. CODE 35-24.1-4.1-15 (1971 superseded) [5]), the Third District held that the evidence was sufficient to show

---

3. IC 16-6-8-7 (1971 superseded) provided:

    *Places used for keeping, selling or using dangerous drugs deemed a common nuisance.* Any store, shop, warehouse, dwelling house, apartment, building, vehicle, boat, aircraft, or any place whatever, which is used by any person for the purpose of illegally using any dangerous drug, or which is used for the illegal keeping or selling of the same, shall be deemed a common nuisance. No person shall keep, or maintain such a common nuisance, nor frequent or visit such place knowing it to be used for any said purposes.

    The penalties for violating this statute where contained in IC 16-6-8-11 (1971 superseded), which provided in relevant part:

    Any person who violates the provisions of IC 1971, 16-6-8-7 shall, upon conviction thereof, be fined not less than twenty-five dollars [$25.00] nor more than one hundred dollars [$100], and may be imprisoned for a period of not more than six [6] months.

    The current version of this statute provides: Any store, shop, warehouse, dwelling house, apartment, building, vehicle, boat, aircraft, or any place whatever, which is used by any person for the purpose of unlawfully using any legend drug, or which is used for the unlawful keeping or selling of the same is a common nuisance. No person shall keep, or maintain such a common nuisance, nor frequent or visit such place knowing it to be used for any said purposes.

    IC 16-6-8-7. IC 16-6-8-10(b) makes violating this section a Class B misdemeanor. Bass and Snow, however, were charged with violating IC 38-48-4-13(a). Although there are some distinctions between the two statutes, see infra fn. 5, the knowledge element of IC 16-8-6-7 is additional support for the proposition that a defendant must know of the unlawful use of a controlled substance in order to be convicted under IC 35-48-4-13(a).

4. IC 35-24.1-4-3.5 (1971 superseded) provided:

    (a) Any store, shop, warehouse, dwelling house, apartment, building, vehicle, boat, aircraft, or any place whatever, which is used by any person for the purpose of illegally using any controlled substance or which is used for the illegal keeping or selling of the same shall be deemed a common nuisance. No person shall visit such a common nuisance.

    (b) Any person who violates this section is guilty of a misdemeanor and shall be fined not less than twenty-five dollars [$25.00] nor more than one hundred dollars [$100] and may be imprisoned in the county jail for a period of not more than six [6] months. [IC 1971, 35-24.1-4-3.5, as added by Acts 1973, P.L. 335, § 1, p. 1834.]

    The court in *Wells* stated that it excluded from consideration whether such a visit, in order to make one liable, requires knowledge of the proscribed use by the visitor. 170 Ind.App. 29, 33, 351 N.E.2d 43, 45, fn. 1. In *Terrel*, however, the court noted that knowledge had been added as an element to IC 1971, 35-24.1-4.1-15(a) which repealed and replaced IC 35-24.1-4-3.5(a). 170 Ind.App. 422, 424, 425, 353 N.E.2d 553, 554, 555, fn. 3 and 5.

5. IC 35-24.1-4.1-15 (1971 superseded) provided:

    Common nuisance (a) A person is guilty of common nuisance if he knowingly visits or maintains a store, warehouse, dwelling, apartment building, vehicle, boat, aircraft or any other place which is used by any person for the purpose of unlawfully using a controlled substance.

    (b) Common nuisance is a misdemeanor punishable to a determinate term of imprisonment in the county jail of not more than six (6) months and a fine of not less than twenty-five dollars [$25.00] nor more than one hundred dollars [$100].

that the defendant had knowledge of the unlawful use of the house and therefore affirmed his conviction of visiting a common nuisance as the crime was defined by the statute upon which the current one is based. Given the recent predecessors to our current statute and case law interpreting them, it is clear that under IC 35–48–4–13(a), the state must prove beyond a reasonable doubt that the defendant knew the building, structure, vehicle or other place which he visited was used for the unlawful use of a controlled substance.[6] The state failed to present sufficient evidence of such knowledge in its case against Bass and Snow.

■ The state argues that the display of paraphernalia, the amount of hashish on the table, and the burnt residue of marijuana were sufficient to give Bass and Snow knowledge that controlled substances were unlawfully used at Cullison's residence. (Appellee's brief pp. 5–6) The trial judge, however, did not base her decision on the fact the hashish and marijuana were contained in the items but the fact that the "bong and apparatus" were in plain view. (R. 152, 154–155) In an action for maintaining a common nuisance, "[t]he possession of paraphernalia which is associated solely with the use of controlled substances is not probative of the issue of whether the defendant kept controlled substances in the building." *Sayre v. State* (1984), Ind.App., 471 N.E.2d 708, 716. The existence of paraphernalia which is associated solely[7] with the use of controlled substances may be probative of the issue of whether a controlled substance was used in the building. We, however, do not find such evidence to

be conclusive on the issue of whether the defendant knew of such use even if the paraphernalia was in plain view. If the trial court's judgment was based solely on the existence of paraphernalia, the judgment was in error. *Ewing v. State* (1974), 160 Ind.App. 138, 145, 310 N.E.2d 571, 576.

"[I]t is well established, however, that a decision of the trial court will be sustained if a valid ground exists to support it, whether or not the trial court considered those grounds." *Bruce v. State* (1978), 268 Ind. 180, 200, 375 N.E.2d 1042, 1054. In short, if the ruling of the trial judge is correct, her stated reason is of no consequence. *Hyde v. State* (1983), 451 N.E.2d 648, 650 *citing Cain v. State* (1973), 261 Ind. 41, 45, 300 N.E.2d 89, 92. We must therefore consider whether there was any evidence, in addition to the existence of the paraphernalia, which would have allowed the trial court to conclude beyond a reasonable doubt that Bass and Snow knew that Cullison's residence was used for the unlawful use of controlled substances.

The additional evidence in this case showed that TCH, marijuana, and hashish were present in the items of paraphernalia removed from the coffee table at Cullison's residence. A police chemist testified that the burnt residue from the bowl of the "bong" contained TCH. Even under a microscope, however, she was unable to determine if marijuana was present. (R. 140) The chemist also testified that the plastic pill bottle contained three partially burned hand-rolled cigarettes which contained an undetermined amount of marijuana and .8 grams of hashish. She further testified

---

**6.** It should be noted that under both IC 16–6–8–7 (1971 superseded) and IC 35–24.1–4–3.5(a) (1971 superseded), a person could be convicted of visiting a common nuisance if the place visited was used for keeping, selling, or using a dangerous drug or a controlled substance. IC 35–24.1–4.1–15(a) (1971 superseded) eliminated keeping or selling a controlled substance in its definition of both visiting and maintaining a common nuisance. Although our present statute includes using, keeping, offering for sale, selling or delivering controlled substances or items of drug paraphernalia in its definition of maintaining a common nuisance, IC 35–48–4–13(b), only unlawfully using a controlled substance is included in its definition of visiting a

common nuisance. IC 35–48–4–13(a). It therefore appears that under IC 35–48–4–13, a person cannot be convicted of visiting a common nuisance if the place visited is not used for the unlawful use of controlled substances but is used for keeping, offering for sale, selling, or delivering controlled substances or items of drug paraphernalia. IC 16–6–8–7, however, encompasses visiting a place where legend drugs, as defined by IC 16–6–8–1, are kept or sold.

**7.** In this case not all of the items described as paraphernalia, if any, were associated solely with the use of controlled substances.

that the scissors contained a partially burnt hand-rolled cigarette which also contained an amount of marijuana, which she did not weigh.

Although we must look to the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom, we must also consider the uncontradicted evidence which is favorable to Bass and Snow. *Murphy v. State* (1985), Ind. App., 475 N.E.2d 42 *citing Morgan v. State* (1980), 272 Ind. 504, 400 N.E.2d 111. Bass testified that no one had smoked marijuana or hashish while she was present. Not only was this testimony uncontradicted, it was corroborated both by Fields' testimony that no one had smoked marijuana and by Officer Davis' testimony that no one appeared to be under the influence of marijuana. Hence, we cannot infer that the distinctive odor of burning marijuana or hashish was present so as to give Bass or Snow knowledge that they were used at Cullison's residence. *Compare Terrel v. State* (1976), 170 Ind.App. 422, 353 N.E.2d 553, *Carter v. State* (1975), 163 Ind.App. 653, 325 N.E.2d 467. In order to conclude that Bass and Snow knew that the controlled substances were used at Cullison's residence, we must infer that they saw the contents of the paraphernalia and recognized the contents as controlled substances. Under the facts of this case, such an inference is not reasonable.

The burnt residue from the bowl of the "bong" only contained the TCH resin which is common to marijuana. The police chemist could not determine whether marijuana was present even under a microscope. It therefore cannot be inferred that Bass and Snow knew that a controlled substance was present in this burnt residue even assuming that either had seen the "bong". The pill bottle contained three partially burned hand-rolled cigarettes and .8 grams of hashish. The scissors contained a small partially burnt hand-rolled cigarette. Although Officer Davis saw the pill bottle, the scissors, and their contents, he was viewing the coffee table from the exact opposite direction of Bass and Snow. (R. 127) It was not established that the marijuana or hashish contained in the bottle would have been visible from their point of view. Further, the uncontradicted testimony of Bass is that many items were on the coffee table including pictures, a plant, coasters, and coupons. Although Bass admitted that she saw the scissors, she associated them with the cut-out coupons which were present. (R. 148) She was never asked if she observed the partially burned hand-rolled cigarette or whether she was familiar with the fact that it might contain marijuana. Under these circumstances, we cannot infer that there was a high probability Bass and Snow were aware that marijuana or hashish was used at Cullison's residence. *Compare Mayotte v. State* (1977), 172 Ind.App. 252, 360 N.E.2d 34 (evidence sufficient to support inference of knowledge where defendant had lived in house and paid most of the rent for three months, marijuana was found in his brother's room, "Thai Stick" and paraphernalia were found in his sister's room, and defendant admitted he had smoked marijuana on the premises); *Wells v. State* (1976), 170 Ind.App. 29, 351 N.E.2d 43 (evidence sufficient to infer knowledge where defendant overheard owner engage in conversation about the sale of phencylidine, observed owner remove package from refrigerator and offer it as a sample of what was for sale, accompanied owner to acquire desired quantity, and overheard owner bargain about price and discuss other drugs owner would be acquiring); *Terrel v. State* (1976), 170 Ind.App. 422, 353 N.E.2d 553 (evidence sufficient to infer knowledge where defendant opened door to officers who observed people shuffling when they knocked on the door to investigate a loud party, strong odor of burning marijuana was present, large quantity of marijuana was found stuffed in kitchen sink, garbage disposal and kitchen cabinet); *Carter v. State* (1975), 163 Ind.App. 653, 325 N.E.2d 467 (evidence sufficient to infer knowledge where lessor defendant testified that two of the defendants had smoked marijuana in the house on several occasions and various quantities of marijuana and smoking equip-

ment were present when house was raided).[8]

 Even if there was sufficient evidence to infer Bass and Snow knew that marijuana and hashish were used at Cullison's residence on the day they were arrested, there is insufficient evidence to support their convictions. A conviction for visiting a common nuisance requires that the state prove beyond a reasonable doubt that the place the defendant visited was used on more than one occasion for the unlawful use of a controlled substance. *Wells v. State* (1976), 170 Ind.App. 29, 351 N.E.2d 43. The state argues that we can infer that controlled substances were repeatedly being used at the Cullison's residence from the fact that the "bong", pill bottle and scissors were in plain view. We disagree. As discussed, the existence of paraphernalia may be probative of the issue of whether controlled substances were used in the building. Such evidence, however, does not conclusively establish use and therefore cannot, in and of itself, conclusively establish repeated use. As there is insufficient evidence to prove beyond a reasonable doubt that Bass and Snow knew Cullison's residence was used for the unlawful use of a controlled substance and that the building was used for that purpose on more than one occasion, the convictions cannot be sustained.

Reversed.

CONOVER and SULLIVAN, JJ., concur.

---

8. We realize that two of these comparative cases noted the existence of paraphernalia when finding the evidence sufficient to infer knowledge of unlawful use or sale, *Mayotte v. State* (1977), 172 Ind.App. 252, 360 N.E.2d 34; *Carter v. State* (1975), 163 Ind.App. 653, 325 N.E.2d 467. We, however, find these two cases distinguishable. In both cases, many other indications of knowledge were present, including the fact that at least some of the defendants had admitted to previously smoking marijuana on the premises. *Id.*