## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 04 2016, 8:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher A. Ramsey
Ramsey Law Office
Vincennes, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Paul F. McGiffen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 4, 2016

Court of Appeals Case No.
42A01-1505-CR-463

Appeal from the Knox Superior Court

The Honorable Ryan D. Johanningsmeier

Trial Court Cause No.
42D02-1402-CM-87

**Mathias, Judge.**

[1] Paul F. McGiffen ("McGiffen") was convicted in the Knox Superior Court for Class B misdemeanor visiting a common nuisance. McGiffen appeals and argues that his conviction is not supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] At 2:10 a.m. on January 16, 2014, Trooper Bill Gadberry ("Trooper Gadberry") summoned Trooper William Campbell ("Trooper Campbell") to a house on 702 West Third Street in Bicknell, Indiana. Tr. p. 3-4. Trooper Gadberry was in the middle of executing a search warrant, and he needed Trooper Campbell's help transporting occupants to jail and searching the premises pursuant to the search warrant. *Id.*

[4] The house was the residence of Ron Chambers, for whom an arrest warrant had been issued. *Id.* at 4. The house was also the subject of a drug investigation in which the search warrant had been issued. *Id.* When Trooper Campbell arrived, Trooper Gadberry, another officer, and U.S. Marshalls had detained five people in the front room of the house. *Id.* at 4-5; 7. One of the detainees was McGiffen. *Id.* at 8.

[5] While standing in the front room, Trooper Campbell observed a chemical odor, drug paraphernalia, and foils with burn marks. *Id.* at 4, 6. Based on his training in investigation of clandestine methamphetamine laboratories, Trooper Campbell opined that the odor was associated with methamphetamine

manufacturing and believed the foils were used to heat methamphetamine. *See id.* at 6–7.

[6] Trooper Campbell took McGiffen and other detainees into custody. *Id.* at 8. Trooper Campbell was told that all detainees were given their Miranda warnings before Trooper Campbell arrived, but Trooper Campbell did not know who gave the warnings. *Id.* at 10. While driving to jail, Trooper Campbell asked the group how long they had been at the house and what they had been doing that night. *Id.* at 10. The detainees responded that they were hanging out and that they had been there all night. *Id.* McGiffen stated that he had been there all day and that he "just came out all day and evening." *Id.* at 10.

[7] After transporting McGiffen and his companions to the jail, Trooper Campbell returned to the house and assisted in the search. *Id.* at 9. The search team found several "one pot" methamphetamine labs,[1] drug paraphernalia, marijuana, and a synthetic drug. *Id.* at 9. Trooper Campbell also saw the methamphetamine labs placed near the back door, but he did not know whether a search team member or another individual placed them there. *Id.* at 9. The record does not establish where within the house the search team found the drug paraphernalia, marijuana, and the synthetic drug.

[8] On February 3, 2014, McGiffen was charged with Class B misdemeanor visiting a common nuisance. A bench trial was held on February 23, 2015, and

---

[1] Trooper Campbell testified that "one pot" is "typically . . . a 20 ounce pop bottle." *Id.* at 9.

McGiffen was convicted as charged. *Id.* at 21. At the sentencing hearing on April 21, 2015, McGiffen was sentenced to 180 days in jail, which was suspended to 365 days of supervised probation with 180 days of electronic home monitoring, and was assessed a $25.00 fine plus court costs. McGiffen now appeals, claiming that the State had insufficient evidence to convict him.

## Standard of Review

[9] When a party challenges the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans denied.* Rather, we recognize the exclusive province of the trier of fact to weigh any conflicting evidence, and we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is not substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

## Discussion and Decision

[10] Indiana Code section 35-48-4-13(a) provides that "[a] person who knowingly or intentionally visits a building, structure, vehicle, or other place that is used by any person to unlawfully use a controlled substance commits visiting a common nuisance, a Class B misdemeanor."

In challenging the sufficiency of the evidence, McGiffen makes two arguments. First, he argues that the State did not establish that he knew he was visiting a place where unlawful substances were used. Appellant's Br. 2-3. Second, he argues that the State did not prove that the house was a "common nuisance." *Id.* at 2. We address each argument in turn.

## A. Knowledge of Unlawful Use

To sustain a conviction for visiting a common nuisance, the State must prove that the individual knows that the place visited was used for the unlawful use of a controlled substance. *See, e.g.*, *Bass v. State*, 512 N.E.2d 460, 461–63 (Ind. Ct. App. 1987). The defendant's knowledge may be inferred from the surrounding circumstances. *See Zuniga v. State*, 815 N.E.2d 197, 200 (Ind. Ct. App. 2004). The presence of drug paraphernalia is probative of the unlawful use of an uncontrolled substance but is not probative of defendant's knowledge of such unlawful use. *Bass*, 512 N.E.2d at 463. Therefore, the State must present evidence beyond paraphernalia to infer knowledge. *Id.*

McGiffen relies on *Bass* in support of his argument. In that case, the defendants entered the residence at approximately 1:15 a.m. *Id.* at 461. The police, responding to a noise complaint, arrived at the residence at about 2:37 a.m. *Id.* The police officer peered through the door and saw defendants sitting on the couch in front of a coffee table. *Id.* A bong, a pill bottle, and scissors containing a burnt segment of a small white object were on the table. *Id.* At trial, Bass testified that no one had smoked marijuana or hashish while she was there and

that she could not see the bong or the pill bottle because the table was so crowded with other items. *Id.* at 464. A chemist at trial testified that burnt residue from the bong contained THC but could not discern whether it contained marijuana even under a microscope. *Id.* at 461. Further, the pill bottle contained 0.8 grams of hashish and cigarettes with an undetermined amount of marijuana. *Id.*

[14] The police officer testified that the bong was not hot when he picked it up and that none of the adults seemed to be under the influence. *Id.* Considering all the evidence, our court could not infer that there was a marijuana or hashish odor present. *Id.* at 464. Even though there were trace amounts of drugs present, our court concluded the evidence was insufficient to infer defendants' knowledge of unlawful use. *Id.*

[15] In contrast to *Bass*, the court in *Zuniga* concluded sufficient evidence supported the defendant's conviction of visiting a common nuisance. The defendant in *Zuniga* went to pick up her child's father and waited in his garage for fifteen minutes. 815 N.E.2d at 198-99. After receiving complaints and conducting surveillance on the home, the police raided the residence. *Id.* at 199. The detective reported the strong smell of marijuana emanating from the garage. *Id.* at 200. The police found drug paraphernalia and residue in the garage. However, the court acknowledged that paraphernalia alone is not enough to infer knowledge and instead focused on the strong smell. *Id.* The strong smell itself was sufficient to infer knowledge. *Id.* ("[W]e can infer beyond a reasonable doubt that based upon the strong smell of burnt marijuana Zuniga

knew that the residence was used for the unlawful use of a controlled substance.").

[16] The mere presence of drugs can also support an inference of knowledge. *See Frye v. State*, 757 N.E.2d 684, 691 (Ind. Ct. App. 2001). In *Frye*, the police observed a residence suspected to be involved with drug activity and arrested a man who admitted to buying cocaine at the particular residence. *Id.* at 687. Soon after, the police approached two men in the front yard, one of whom was Frye. *Id.* After identifying themselves as police officers, Frye ran into the house and the police followed him. *Id.* While rounding up all of the house's occupants, the police found marijuana, marijuana and cocaine pipes, and other drug paraphernalia. *Id.* Frye was found with cocaine in his possession. *Id.* The court noted Frye's possession of cocaine but also emphasized the "sheer quantity of illegal drugs and drug paraphernalia around the house" to support the inference of knowledge. *Id.* at 691.

[17] In the case before us, ample evidence supports the inference that McGiffen knew the house he visited was used for unlawful use of a controlled substance. Trooper Campbell smelled a chemical odor in the house. The odor alone is sufficient to infer McGiffen's knowledge of illegal activity on the premises. *See Zuniga*, 815 N.E.2d at 200.

[18] Moreover, the State presented additional evidence that supports the inference that McGiffen knew the house was used for unlawful use of a controlled substance because the troopers discovered not just one, but several, "one pot"

methamphetamine labs, marijuana, and a synthetic drug.[2] *See Frye*, 757 N.E.2d at 691.

[19] Lastly, we note the length of time in which McGiffen was in the house. He stated that he was there all day until the troopers arrived at 2:10 a.m. Although the time period is not dispositive, the fact that McGiffen was in the house for several hours supports the inference that he knew the house was used for unlawful drug consumption.

### B. Common Nuisance

[20] The State is also required to prove that the place defendant visited was used more than once for unlawful use. *Bass*, 512 N.E.2d at 465 (citing *Wells v. State*, 351 N.E.2d 43 (1976)). A "common nuisance . . . necessarily requires proof of a continuous or recurrent violation." *Hale v. State*, 785 N.E.2d 641, 643 (Ind. Ct. App. 2003).

[21] "[T]he existence of paraphernalia may be probative of the issue of whether controlled substances were used in the building. Such evidence, however, does not conclusively establish use and therefore cannot, in and of itself, conclusively establish repeated use." *Bass v. State*, 512 N.E.2d 460, 461–63 (Ind. Ct. App. 1987). However, the presence of both drug paraphernalia and drugs may be

---

[2] The record is silent concerning the initial location of the drugs within the house.

sufficient. *Traylor v. State*, 817 N.E.2d 611, 620 (Ind. Ct. App. 2004), *overruled on other grounds by Buelna v. State*, 20 N.E.3d 137 (Ind. 2014).

[22] In *Traylor*, police responded to an anonymous tip regarding a strong odor coming from a mobile home. *Id.* at 614. The police found an HCI generator, which is used to manufacture methamphetamine, sitting on the gas grill by the back door. *Id.* Additionally, the police found a briefcase in the garage that contained a baggie of methamphetamine and a glass pipe, as well as other glass pipes with burnt residue throughout the mobile home. *Id.* at 620. Based on these facts, our court held that the evidence was sufficient to infer repeated use. *Id.*

[23] Likewise, in the instant case, sufficient evidence establishes that the house McGiffen visited was a common nuisance. The police in this case found several "one pot" methamphetamine labs, marijuana, and a synthetic drug. The combination of the drugs and drug paraphernalia constitutes sufficient evidence to infer that the house was a common nuisance. *See Traylor*, 817 N.E.2d at 620.

[24] For all of these reasons, we conclude that sufficient evidence infers that McGiffen knowingly visited a common nuisance, and we therefore affirm McGiffen's conviction.

[25] Affirmed.

Kirsch, J., and Brown, J., concur.